# PAUL L. STEPHENS, Appellant, v. JAMES E. MOORE et al.

### Division One, April 6, 1923.

1. **TRUST ESTATE:** Revocation. A completely executed trust, even though it be a 'voluntary one, without reservation of power of revocation, can only be revoked by consent of all the beneficiaries.

2. ———: ———: **Sole Beneficiary.** Whether the grantor in the trust conveyance, naming no other beneficiary than himself, is the sole beneficiary depends upon whether he thereby disposed of the entire fee; in other words, whether he divested himself of the reversion expectant upon the termination of the trust for his life.

3. ———: ———: ———: **Devolution of Fee: Remainder.** Where the grantor in his trust deed expressly provided that "upon my death the trust shall terminate and the trust estate shall pass to and vest in my legal heirs, or as may be directed by will" the trustee did not take the fee. Neither did those words create a remainder, vested or contingent.

4. ———: ———: ———: **Remainder Over to Heirs: Reversion.** If the grantor limits his estate to another for his own life, remainder over to his own right heirs, they do not take as remaindermen, but as reversioners; and in such case it would be competent for the grantor, as being himself the reversioner, to grant away the reversion.

5. ———: ———: ———: **Life Estate and Reversion.** A deed by which the grantor for his sole benefit conveys his property to a trustee, in which he declares that "upon my death the trust shall terminate and the trust estate shall pass to and vest in my legal heirs, or as may be directed in my will," and whereby it is apparent that it is not necessary for the trustee to take an estate of inheritance in order to perform all the duties imposed upon him, is not a disposition of the grantor's estate to take effect at his death, but its sole purpose being to provide for the management of his property during the grantor's own life, he may dispose of the reversion as he sees fit, and since he is the sole beneficiary a court of equity at his request may revoke the deed upon a proper showing, although no power of revocation is expressed therein.

6. ———: ———: **Powers of Attorney.** A deed purporting to be a conveyance in trust, but in fact giving to the trustee no power

over the property except to hold, manage and control it for the benefit of the grantor alone, is in effect a power of attorney, and invests the grantee merely with the power of an agent, and is revocable at the pleasure of the grantor.

7. ————: ————: Res Adjudicata: Mistake: Fraud. On the day he was twenty-one years of age plaintiff executed a deed by which he conveyed his entire estate to defendant as trustee, to hold, control and manage it for his benefit during his natural life. The grantor being the sole beneficiary and no estate of inheritance being conveyed to the trustee, and the conveyance being in effect a power of attorney revokable at the grantor's pleasure, six months later he brought suit in the circuit court, alleging that the conveyance was without consideration, that he did not understand its nature and legal effect, and that it was not his free and voluntary act, but was obtained by the undue influence of his mother and step-father. That suit was compromised by a written agreement that the trust should continue, and that at intervals of ten years the circuit court upon his application might terminate it upon being satisfied that he was capable of conserving his property and prudently managing his affairs, and this agreement was approved by the circuit court and embodied in its judgment directing the trustee to administer the trust according to the terms of said agreement. A year later he brought this suit, alleging the same grounds alleged in the former suit, and adding that he had revoked the trust, by formal instrument in writing, duly signed; acknowledged and recorded, and had repeatedly demanded a return of the property by the trustee. *Held*, that, if it be conceded that the judgment, rendered by consent, was an adjudication adverse to grantor on the issue of fraud, mistake and undue influence, still it did not estop him from thereafter asserting his right of revocation. The right of revocation existed whether or not the deed was voidable, because fraud and mistake operated in its procurement.

8. ————: ————: ————:Consideration. Where the right of the grantor to revoke the conveyance of his property in trust existed, a new promise that the grantor may apply to the circuit court at stated intervals to terminate the trust, and carrying the implication that he would not terminate it except upon the consent of the court, but containing no express provision that the powers granted were irrevocable or could not be recalled without the court's consent, being wholly without consideration, although approved by the court in a formal judgment, did not operate to deprive the grantor of the unqualified right to revoke the trust whenever he saw fit.

9. ———: ———: ———: **Bond of Trustee: Settlement with Court.**
An individual, *sui juris* and under no disability, who appoints an
agent to transact his business, cannot impose upon a court the
duty, nor confer upon it the power, to audit the accounts of such
agent, nor by agreement make himself a ward of the court. The
fact that the conveyance by such person of all his property to a
trustee, to hold, manage and control the same, required the trustee
to give bond to be fixed by the court and to make yearly settle-
ments with the court, and that he had stipulated in a supple-
mental agreement, approved by the court's judgment, that the
trust could be terminated only with the court's consent, did not
subject him to the jurisdiction of the court, nor estop him from
revoking the conveyance or from asserting that said judgment
was not *res adjudicata* of his right of revocation.

10. ———:·———: **Spendthrift Trust.** A provision in a trust deed in-
tended to create a spendthrift trust cannot be upheld as
evidence that the grantor was a spendthrift. Besides, an attempt
of the grantor to create a spendthrift trust for himself alone is
wholly futile.

## Appeal from Callaway Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

REVERSED AND REMANDED (*with directions*).

*Atwood, Wickersham, Hill, Levis & Chilcott* and
*W. C. Maughs* for appellant.

(1) Plaintiff is entitled to the relief prayed for in
his bill. (a) Because this is a voluntary trust estab-
lished solely for the benefit of Paul Stephens. No rights
of third parties or next of kin are in any way involved.
Being the sole beneficiary of the trust created, the power
of attorney not being coupled with any interest, this trust
is revocable at the will of Paul Stephens. (b) Because
the trust was created under the belief and understand-
ing of Paul Stephens that it was revocable at his will.
The overwhelming proof shows that there was never any
intention at any time of making an irrevocable trust.
(c) Because the evidence shows that the trustee exer-
cised his powers in a harsh and arbitrary manner con-

trary to the wishes and best interests of Paul Stephens, and his actions caused discord in the Stephens family, and involved the estate in useless and expensive litigation. Such a trust is revocable, and upon refusal of the trustee to reconvey to his trustor and beneficiary the property so held, a court of equity will end the trust and compel a restitution and accounting. Jamison v. Mo. Valley Trust Co., 207 S. W. 788; Cornwell v. Orton, 126 Mo. 360; Raffel v. Deposit and Trust Co., 100 Md. 141; Russell's Appeal, 75 Pa. St. 269; Garnsey v. Mundy, 24 N. J. Eq. 243; Rick's Appeal, 105 Pa. 528; 26 Ruling Case Law, p. 1208, sec. 49; Ewings v. Wilson, 132 Ind. 233, 19 L. R. A. 767; Mullock v. Mullock, 31 N. J. Eq. 602; Peters v. Peters, 136 Md. 172; Eakle v. Ingram, 142 Cal. 15, 100 Am. St. 99; Sears v. Choate, 146 Mass. 395, 4 Am. St. 320; Aylesworth v. Whitcomb, 12 R. I. 298, 2 A. L. R. 579; Bank v. Fidelity Ins. T. & S. Co., 186 Pa. St. 332, 65 Am. St. 860; Mober v. Hobbs, 2 Younge & C. 327, 15 L. R. A. 80; Dodson v. Ball, 60 Pa. 501, 100 Am. Dec. 586, 15 L. R. A. 80; 39 Cyc. 102; Armour v. Murray, 79 N. J. L. 531; Angle v. Marshall, 55 W. Va. 671; Ball v. Carew, 13 Pick. (6 Mass.) 128. (2) The plea of *res judicata*, or *retraxit*, on account of the alleged settlement of the suit instituted to terminate this trust is unavailing, because there was no hearing whatsoever upon the merits or determination of the merits of that case, and was a nonsuit pure and simple, and oral evidence is admissible to show no determination of merits. Rickerson v. City of Mexico, 58 Mo. 61; Ellington v. Crockett, 13 Mo. 72; Wells v. Moore, 49 Mo. 229; 23 Cyc. 1535; 7 Words & Phrases, 629; Schmidt v. Halle, 15 Mo. App. 36; O'Malley v. Musick, 191 Mo. App. 413; Baldwin v. Davidson, 139 Mo. 118; Shoat v. Taylor, 137 Mo. 517; Johnson v. United Rys. Co., 243 Mo. 278; 23 Cyc. 113 *et seq.* (3) A person *sui juris* cannot create a spendthrift trust. If defendant's proof is to be relied upon, i. e., that this trust was created for the purpose of defeating creditors, it was void under our statutes. Jamison v. Mo. Valley Trust Co., 207 S. W. 789; Kessler v. Phillips,

189 Mo. 515; Graham v. Moore, 189 S. W. 1188; Bank v. Burns, 199 S. W. 285; Secs. 2275, 2276, R. S. 1919.

*R. D. Rodgers, Baker & Baker* and *McBaine & Clark* for respondent.

(1) The trust agreement made is not revocable at will of the appellant. There is no question of the right of appellant's creditors in this case. This is a suit by appellant to avoid the trust. There is no rule of law that prevents a person to convey his property to a trustee and providing that the trustee shall pay over to him the income therefrom. 24 R. C. L. 355, sec. 6; 39 Cyc. 36; 2 Black on Rescission of Contracts and Written Instruments, p. 929, sec. 359; Ewing v. Shannahan, 113 Mo. 188; Sims v. Brown, 252 Mo. 58; Jamison v. Trust Co., 207 S. W. 788; McFarland v. Bishop, 222 S. W. 143; Sec. 2275, R. S. 1919; Melvin v. Hoffman, 235 S. W. 107. (2) Appellant executed the deed of trust to protect his property. He realized his personal inefficiency to look after his property, and executed the deed of trust for the purpose of insuring to himself the income therefrom during his life. He executed the deed without fraud or undue influence and cannot revoke the same at will, since the deed of trust does not contain a power of revocation at will. Chanfrau v. Alexander, 185 Fed. 537; Brown v. Mercantile Trust Co., 40 Atl. 256; Wilson v. Anderson, 40 Atl. (Pa.) 1096; Taylor v. Buttrick, 165 Mass. 547, 52 Am. St. 530; Neal v. Black, 117 Pa. 83, 34 L. R. A. 707; Carroll v. Smith, 59 Atl. (Md.) 131; Dayton v. Stewart, 59 Atl. (Md.) 281; Toker v. Toker, 3 Ddg. J. & S. 491; Rodgers v. Rodgers, 55 Atl. (Md.) 450; Beard v. Beard, 173 Ky. R. 139; Downs v. Security Trust Co., 194 S. W. (Ky.) 1041. (3) The cases relied upon by appellant for revocation of deed of trust, are cases where the court interfered on account of fraud or undue influence practiced upon the settlor, or where the suit was instituted by creditors of the settlor, or where the deed of trust was executed by mistake, or was testamentary in its nature. These cases are not in point to support the argument that

a deed of trust not containing a power of revocation is nevertheless revocable at will. Refell v. Deposit & Transit Co., 100 Md. 141; Ewing v. Wilson, 132 Ind. 223, 19 L. R. A. 767, note; Bank v. Fidelity Trust & Deposit Co., 186 Pa. St. 333; Jamison v. Trust Co., 207 S. W. 788; Rick's Appeal, 105 Pa. 528; 15 L. R. A. 78, note; 39 Cyc. 102; Matthews v. Thompson, 186 Mass. 14, 104 Am. St. 550, 66 L. R. A. 421; 26 R. C. L. p. 1208, sec. 50 and p. 1211, sec. 53; Keyes v. Carleton, 141 Mass. 45, 55 Am. Rep. 446; Petition of Thurston, 154 Mass. 596, 26 Am. St. 278. (4) The deed of trust, as amended by the agreement of March 1, 1919, and incorporated in the judgment entered in the first case filed to set aside this deed of trust, provides means for the revocation of the deed of trust and rebuts the idea that the power of revocation was inadvertently or mistakenly omitted. (5) The judgment entered in the first case of Stephens v. Moore is *res adjudicata* of the issues involved in this suit. A judgment in that case was entered upon an agreement duly entered into by the parties, which agreement was fully set out in the judgment. It effectually disposes of all the issues involved and estops the plaintiff from maintaining this action. Michoud v. Garrard, 4 Howe 503; Myllius v. Smith, 53 W. Va. 173; Gawtry v. Adams, 10 Mo. App. 29; Melvin v. Hoffman, 235 S. W. 107. (6) The judgment in the first case was entered upon an agreement by consent of the parties, and it has often been held that a judgment so entered is as binding upon the parties as if entered after a contested hearing upon the merits. Short v. Taylor, 137 Mo. 517; Casler v. Chase, 160 Mo. 425; Robinson v. Seay, 175 Mo. App. 713; Jones v. Hubbard, 193 Mo. 147; Lewis v. Railroad, 107 Ark. 41; Pelton v. Mott, 11 Vt. 148, 34 Am. Dec. 678; Turner v. Fleming, 45 L. R. A. (N. S.) 265; Glasner v. Weisberg, 43 Mo. App. 214; McCord v. Martin, 191 Pac. (Cal.) 89; Robinson v. Railroad, 150 Pa. (Kan.) 636; 1 Black on Judgments (2 Ed.) sec. 15; Tompkinson v. Willits Mfg. Co., 23 Fed. 895; McCreery v. Fuller, 63 Cal. 30; Townsdin v. Shrader, 39 Kan. 286; United States v. Parker, 120 U. S. 93, 30 L. Ed. 601; Doan v. Bush, 198 S. W. (Ark.) 261; 15 R.

C. L. p. 643, sec. 86; Schmidt v. Oregon Gold Mining Co., 28 Ore. 9, 52 Am. St. 759; Goodman v. Griffith, 155 Mo. App. 585; Denegre v. Walker, 214 Ill. 113, 105 Am. St. 98. (7) The manner of the trustee in handling the estate of his ward is not in issue here but, if it is, the testimony shows that the estate has been well and properly handled.

RAGLAND, J.—This is an action in equity to enforce the revocation of a voluntary trust and compel a reconveyance of the trust property.

Alexander F. Stephens died in 1904 possessed of a considerable estate; he left surviving him a widow, Laura Stephens, and three sons, John, Frank and Paul. Paul, the plaintiff in the present action, was six or seven years of age at the time of his father's death, being the youngest of the three boys. His mother, upon due appointment, acted as his curator until her marriage to one Newcomer. After that event Newcomer became the curator, and as such had the management and control of his ward's estate until the latter reached his majority.

During all of his childhood Paul's health had been frail and for that reason he had received but meager schooling. One witness gave it as his opinion that the young man was, and always had been, sub-normal in mentality, but his mother and the other members of the family testified to the contrary. At the time of the trial the ailments of his childhood had about disappeared, but premonitory symptoms of tuberculosis having manifested themselves he had taken up residence in New Mexico. The change had proven beneficial and his health was improving.

Paul's brothers, Frank and John, each lost his inheritance by waste or mismanagement soon after it came into his hands. For that reason Mrs. Newcomer became very solicitous as Paul approached his majority lest he should suffer a like misfortune. She thereupon sought counsel as to means that might be employed to protect her son's estate against his own possible improvidence,

or lack of capacity. After several conferences with her legal adviser, at all of which Paul was present, it was decided that a conveyance of the property in trust would be the most satisfactory means that could be devised for accomplishing the purposes the mother had in view. Accordingly a deed of trust conveying the boy's property, approximately $30,000 worth of real estate and $10,000 in notes and bonds, was prepared two or three days in advance of his twenty-first birthday, and on the morning of that day, July 20, 1918, the deed was duly signed and acknowledged by him and the property thereby conveyed was transferred and delivered by his curator directly to the trustee. The material portions of the deed were as follows:

"Know all men by these presents, that I, Paul M. Stephens, of Callaway County, Missouri, for and in consideration of the sum of one dollar to me in hand paid, and of the covenants and conditions hereinafter mentioned and to be faithfully performed and carried out, do hereby grant, bargain, assign, transfer and set over to James E. Moore, of Callaway County, Missouri, all of my right, title and interest in and to the following: [Here follows a description of the property.]

"To have and to hold the real estate and personal property aforesaid for my sole use and benefit, upon the following terms and conditions, to-wit: . . .

"Third: That the said James E. Moore as my trustee shall have complete control, supervision and management of my said property, both real and personal, and that it shall be his duty at all times to keep said lands rented on the best terms obtainable, to reliable and trustworthy tenants, and to see that same are cultivated and used in a husband-like manner, to the end that the same shall not deteriorate in value or be wasted by improper or improvident cultivation; to keep up the fences, buildings and other improvements thereon, to keep the buildings reasonably insured, and pay all taxes thereon as they become due; to keep all of my said moneys and other personal estate hereby conveyed or hereinafter in-

herited or acquired safely and securely invested; to pay all taxes thereon, and, not less than once each year pay over to me the net proceeds from my said lands and personal estate and property up to the date of such payments.

"Fourth: That if at any time I shall desire to live upon and cultivate for my own use a portion of my said lands, I shall be permitted to do so by my said trustee without accounting to him for rent; but provided that my said trustee shall at all times have the right to retain the control and management of a sufficient part or portion of said lands to insure a sufficient income to him for the payment of the yearly taxes and insurance on and up-keep of buildings and other improvements.

"Fifth: That during the existence or continuance of this trust, I shall have no power or authority to convey, alienate or encumber said trust property or any part thereof; or to anticipate or assign, mortgage or encumber in advance my yearly income or rent therefrom, and that so long as this trust continues or exists the title to all of the property hereby conveyed, and the annual income thereof (until actually paid over to me), shall be and remain absolutely in the said trustee or his successor in office. . . .

"Seventh: That the said James E. Moore, as trustee as aforesaid, shall give bond in such sum as may be fixed by the Circuit Court of Callaway County for the faithful discharge of his duties as such trustee, and that he shall make yearly report and settlement with the said circuit court of his affairs and business as such trustee and as he may be from time to time directed and required by said court.

"Eighth: In the event said trustee shall die or shall refuse or neglect to act, or for any misfeasance or malfeasance, his successor shall be appointed by the said Circuit Court of Callaway County, and said substitute trustee, upon the giving of such bond as may be required by said circuit court, shall succeed to all the rights and duties of said original trustee.

"Ninth: Said trustee or his successor or successors in office, shall be allowed such reasonable compensation yearly for services as may be fixed and determined from year to year by the said circuit court. . . .

"Eleventh: Upon my death this trust shall terminate and the trust shall pass to and vest in my legal heirs, or as may be directed in my will."

In the following January, Paul Stephens, through his attorney, filed suit in the Circuit Court for Callaway County against the trustee, Moore, to have the deed of trust annulled and set aside. The grounds upon which plaintiff in that suit sought to have the deed set aside were: (1) There was no consideration for the execution of the instrument; (2) plaintiff did not understand the nature and legal effect of the deed, in that he thought he was simply constituting the said James E. Moore his manager and adviser; and (3) the deed was not the free and voluntary act of the plaintiff, but was obtained by the undue influence of his mother and step-father. In due time Moore, the defendant in said action, filed answer to the petition. Thereafter while the suit was thus pending a conference was had at which were present Paul Stephens, his mother, step-father and attorney and the trustee Moore and his attorneys. The conference resulted in an agreement between Stephens and Moore which was reduced to writing, signed by them and filed in the case. The portions of the stipulation pertinent to the questions here involved are as follows:

"Whereas the party of the first part, Paul Stephens, has decided to dismiss his suit against the party of the second part, James E. Moore, trustee, and whereas the said Paul Stephens and the said James E. Moore, trustee, have decided to amend the terms and conditions of the trust of the 20th day of July, 1918, and to reaffirm and ratify the terms of said trust, to this end this agreement is made and entered into.

"First: It is agreed that the said Paul Stephens shall have the privilege at any time after the expiration of ten years from this date to apply to the Circuit Court

of Callaway County, Missouri, to terminate said trust, and, that said trust shall be terminated upon such application, provided the said court is satisfied that the said Paul Stephens is capable of conserving his property and estate, and of prudently managing his affairs. But also provided that in case an application is made and is denied and rejected by the said circuit court, then another application shall not be made for a further period of ten years. And further application shall not be made oftener than every ten years. . . .

"Fourth: It is agreed that the terms and provisions of said original trust agreement shall stand except as herein modified."

Pursuant to the stipulation the Circuit Court for Callaway County entered judgment which so far as material here was as follows:

"The court having seen and heard read the agreement aforesaid, and having heard evidence on the condition of the estate of said Paul M. Stephens in the hands and control of said James E. Moore, trustee, and being satisfied that it is for the best interest of the estate and the aforesaid Paul M. Stephens, the plaintiff herein, to have the litigation involved in this suit settled upon the terms and conditions contained in said agreement, it is therefore ordered by the court that said agreement heretofore entered into the 1st of March, 1919, above set out, between said Paul M. Stephens and James E. Moore, be ratified and approved by the court, and said trustee is hereby directed to administer said trust according to the terms of the trust agreement, dated July 20, 1918, as amended by the agreement of March 1, 1919."

The present suit was commenced January 31, 1921. In addition to the grounds set up in the former action for setting aside the deed of trust to defendant Moore, the petition alleges that before the filing of this suit plaintiff "repeatedly demanded of said defendant Moore, trustee, that he return to plaintiff all his property obtained under said deed of trust and that said Moore refused and still refuses to surrender to plaintiff his prop-

298 Mo.—15

erty." The prayer is: that the deed of trust be declared null and void; that the defendant be required to reconvey the property of the plaintiff received by him under the deed of trust; that he be required to make an accounting; and that plaintiff have general relief.

The answer consisted of a general denial, a plea of *res adjudicata,* and one of estoppel.

The circuit court after a full hearing dismissed plaintiff's bill. From such judgment plaintiff appeals.

The determination of two general questions is decisive of the appeal: Is the trust revocable? And, if so, is the grantor estopped from exercising the right of revocation by the judgment in a former action brought to set the deed of trust aside? We will consider these in the order named.

I. (1) We have heretofore announced our adherence to the doctrine, supported by the overwhelming weight of authority, that a completely executed trust, even though it be a voluntary one, without reservation of power of revocation can only be re-voked by the consent of all the bene-ficiaries. [Ewing v. Shannahan, 113 Mo. 188; McFarland v. Bishop, 222 S. W. 143; Melvin v. Hoffman, 290 Mo. 464, 235 S. W. 107.] As the deed in question contains no express power of revocation it is necessary to determine who the beneficiaries are and whether they consent to a termination of the trust. Appellant insists that under the terms of the deed of trust he is the sole beneficiary. Whether he is or not depends upon whether he disposed of the entire fee, or in other words whether he divested himself of the reversion expectant upon the termination of the trust for his life. A reading of the deed makes it evident that it is not necessary for the trustee to take an estate of inheritance in order to enable him to perform all the duties imposed upon him by the trust. And the express language is: "Upon my death the trust shall terminate and the trust shall pass to and vest in my legal heirs, or as may be

*Revocation: Sole Beneficiary: Reversion.*

directed in my will.'' It is clear that the trustee does not take the fee; upon the death of the grantor the trustee's estate comes to an end; no further duty devolves upon him; he has nothing to do with the devolution of the property. The next inquiry is, do the words, ''and the trust [estate] shall pass to and vest in my legal heirs,'' create a remainder, either vested or contingent? ''It is accepted as one of the dogmas of the common law that if one makes a limitation to another for life, with a remainder over, either mediately or immediately, to his heirs or the heirs of his body, the heirs do not take remainders at all, but the word 'heirs' is regarded as defining or limiting the estate which the first taker has, and his heirs take by descent, and not by purchase.'' And again: ''At common law, if a man seized of an estate limited it to one for life, remainder over to his own right heirs, they would not take as remaindermen, but as reversioners; and it would be, moreover, competent for him, as being himself the reversioner, after making such a limitation, to grant away the reversion.'' [Akers v. Clark, 184 Ill. 136.] It is the generally accepted rule, that where there is a grant to one for life, with remainder to the heirs of the grantor, there is in fact no remainder; for the limitation, though denominated a remainder, continues in the grantor as his old reversion and does not devolve upon his heirs as purchasers, as it would if it were a remainder, but as his heirs. [23 R. C. L. 516; Akers v. Clark, supra.] When the deed involved in this proceeding is considered as a whole it seems very clear that the grantor had no thought of making a disposition of his estate to take effect at his death; the sole purpose was to provide for the handling and managing of his property during his own lifetime; the words, ''and the trust shall pass to and vest in my legal heirs, or as may be directed in my will,'' is a mere statement, by way of further limitation of the trustee's estate, that the grantor reserves full authority to dispose of the reversion as he sees fit. In view of the foregoing considerations we conclude that the appellant is

the sole beneficiary under the trust and that no other person has any interest in the trust estate, contingent or other.

(2)  It is of course true that there are many trusts that a court of equity would not be warranted in terminating, even though all the beneficiaries were *sui juris* and consented thereto.  We do not deem it necessary to point out the distinctions; it will be sufficient for the purpose in hand to consider the nature of the trust sought to be terminated by this proceeding.  The deed creating it purports to be a conveyance in trust of the grantor's property, not coupled with any interest, but solely for the purpose of supervision and management.  It gives the trustee no power over the property except the management of it.  All of the rights or powers with which it invests him are fully comprehended in the following language:

*Power of Attorney.*

"My trustee shall have complete control, supervision and management of my said property, both real and personal, and it shall be his duty at all times to keep said lands rented on the best terms obtainable, to reliable and trustworthy tenants, and to see that same are cultivated and used in a husband-like manner, to the end that the same shall not deteriorate in value or be wasted by improper or improvident cultivation; to keep up the fences, buildings and other improvements thereon, to keep the buildings reasonably insured, and pay all taxes thereon as they become due; to keep all of my said moneys and other personal estate hereby conveyed or hereinafter inherited or acquired safely and securely invested; to pay all taxes thereon and, not less than once each year, pay over to me the net proceeds from my said lands and personal estate and property up to the date of such payments."

These rights and powers while granted by an instrument in the form of a conveyance in trust could have been just as effectually conferred by the ordinary power of attorney.  The doctrine is universal that a trustee takes exactly that quantity of interest, whatever it may

be, which the purpose of the trust and its proper execu-
tion may require, and no more. [Young v. Hyde, 255 Mo.
496.] The deed here should therefore be regarded as in-
vesting the grantee merely with the powers of an agent,
and, as the grant was not coupled with an interest nor
supported by an independent consideration, such powers
would be revocable at the pleasure of the grantor. [Angle
v. Marshall, 55 W. Va. 671.]

II. (1) In the first suit appellant sought to have
the deed of trust set aside on the grounds of fraud,
mistake and undue influence. The petition in the present
case while alleging substantially the same matters is
somewhat broader; it avers that prior to
the filing of the suit plaintiff had repeatedly
Res Adjudicata.
demanded a return of the property by the trustee, and
evidence was offered without objection that a formal rev-
ocation of the trust, in writing, signed and acknowl-
edged, had been duly filed in the offices of the recorder
of deeds in the counties in which the real estate is sit-
uated, followed by a demand for a reconveyance and re-
turn of property. Respondent insists that the judgment
in the former action bars a recovery by appellant in this.
If it be conceded that the judgment, which was rendered
by consent, was an adjudication adverse to appellant of
the issues of fraud, mistake and undue influence, still it
would not estop him from thereafter asserting the right
of revocation. The right to have the deed annulled and
the right to revoke the grant therein made are distinct
and independent; the first arises on the hypothesis that
the instrument is voidable because of fraud and mistake
operating at its inception, the second exists notwithstand-
ing that it may be valid and unimpeachable.

(2) An examination of the judgment discloses that
it merely records the approval by the court of the agree-
ment entered into between the parties which constituted
the basis for the dismissal of the suit. The agreement
operated to modify the terms of the orig-
New Promise:
No Consideration.
inal deed of trust in some minor par-
ticulars. The only change made that has

any bearing on the present controversy was through the provision that the grantor may apply to the Circuit Court of Callaway County at stated intervals to terminate the trust. The deed of trust so modified carries the implication that the grantor cannot terminate the deed of trust, except with the consent of the court on application therefor made at one of the times stipulated. This new promise on the part of the grantor, if it may be so designated, was wholly without consideration. As already pointed out he had the unqualified right to revoke the trust whenever he saw fit, and under the supplemental agreement he received nothing in return for its surrender. All the concessions were made by him in ratifying the original deed and waiving his action to have it set aside for fraud and undue influence. So that, if the modified instrument contained an express provision that the powers therein granted are irrevocable, or could not be recalled without the consent of the court, they would be subject to revocation notwithstanding. [MacGregor v. Gardner, 14 Iowa, 326; Walker v. Denison, 86 Ill. 142.]

(3) It might be suggested that, as the grantor had provided in the original deed that the trustee should qualify by giving a bond to be fixed by the Circuit Court for Callaway County and should make yearly settlement with the court, and in the supplemental agreement had stipulated that the trust could be terminated only with the consent of that court, he had somehow made himself a ward of the court and subjected both himself and his property to its jurisdiction. How the jurisdiction of the court could be invoked by these means is, however, wholly incomprehensible. While the circuit court has jurisdiction to declare, enforce and administer trusts, its jurisdiction in that respect, as in all others, can be called into play only by certain well known prerequisites. Among other things, it is necessary that there be a controversy in some form—a plaintiff who complains of an injury done and a defendant who is called upon to make satisfaction for it. [2 Broom and Hadley's Com., 19.] An individual who is *sui juris* and under no disability whatever and who appoints an agent to trans-

*Bond: Ward of Court.*

act his private business cannot, as was attempted to be done in this case, impose upon a court the duty, nor confer upon it the power, to audit the accounts of such agent. Nor can such an individual make himself a ward of the court. Courts of chancery have from time immemorial exercised supervision over the estates of minors and persons *non compos mentis,* but they owe no duty, and have no power, to exercise a guardianship over persons who are free and independent agents and who are in the possession of all their faculties.

There was a provision of the deed which was evidently intended to create a spendthrift trust, but there was no evidence that the grantor was a spendthrift; he had never had the opportunity of exercising talents of that kind, if he possessed them; besides the effort to create a spendthrift trust for himself was wholly futile. [Jamison v. Trust Co., 207 S. W. 788.]

**Spendthrift Trust.**

The judgment of the circuit court is reversed and that court is directed to enter a judgment enforcing the revocation of the trust and requiring the trustee to reconvey the trust property in his possession and to account. All concur.