Morton J. May and Tom May, Appellees, v. Florene May Marx et al., Appellees, and Nancy May Straus et al., Appellants.

Gen. No. 40,237.

Opinion filed April 26, 1939.

WILLIAM H. HAIGHT, of Chicago, for certain appellant.

WILLIAM R. SWISSLER, *pro se,* and ALBERT E. JENNER, JR., of Chicago, for certain other appellants.

BENJAMIN F. GOLDSTEIN and HERBERT L. HART, both of Chicago, for certain appellee.

LEWIS, RICE, TUCKER, ALLEN & CHUBB and SIDLEY, MCPHERSON, AUSTIN & BURGESS, all of Chicago, for certain other appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

Florene May arrived at the age of 18 years on February 17, 1921. She was then a resident of St. Louis, Missouri. Under the law of that State, females reach their legal majority at the age of 18 years. On April 27, 1921, while a resident of St. Louis, she executed the following trust instrument:

"KNOW ALL MEN BY THESE PRESENTS, that I, Florene May, desiring to preserve my property so that it may be continuously and safely invested and desiring to secure to myself thereby a safe, steady and permanent income, and in consideration of the premises and One Dollar ($1.00) to me in hand paid by my brothers, Morton J. May and Tom May, receipt whereof is hereby acknowledged—and the acceptance by them of this

Trust, do hereby transfer, assign and deliver to them the property hereinafter mentioned and more fully described in Schedule 'A' hereto attached.

"To HAVE AND TO HOLD the same unto said Morton J. May and Tom May, their successors and assigns, IN TRUST, nevertheless, to and for the following uses, intents and purposes:

"To hold the same for me and collect all dividends and interest to accrue thereon for the period hereinafter mentioned:

"1. To manage said property, and with power from time to time, at their discretion, to sell same and reinvest the proceeds of said sale, and to invest the income, dividends and interest thereon in high class securities, real or personal.

"2. To pay to me quarterly on the first day of January, April, July and October of each year out of the income, dividends and interest derived from said trust funds Three Thousand Dollars ($3,000.00).

"3. The Trustees to attend all meetings of stockholders or otherwise, which they shall be entitled to attend by virtue of being the holders of shares of stock hereby transferred and assigned to them, and to vote at such meetings in such manner as they deem best.

"4. The Trustees may designate one of their number to be custodian of the trust funds.

"5. This Trust shall continue for twenty-five years from this 27th day of April, 1921, if I shall so long live. Upon my death the trust shall be dissolved and the property shall descend to my heirs, as the law provides.

"IN WITNESS WHEREOF, I have hereunto subscribed my name, and the other parties hereto in their capacity as Trustees for the purpose of signifying their acceptance of the Trust herein created, have subscribed

their names to three copies hereof, each being an original, this 27th day of April, 1921.

(Signed) Florene May
Tom May
Morton J. May"

Schedule "A" attached to the instrument, contains a list of securities. On May 18, 1921, by a supplemental trust instrument, the settlor modified the two trust instruments of April 27, 1921. A paragraph of the modified document reads as follows: "I authorize and empower my said Trustees to pay to me the whole or any part of income accumulated by them in excess of the quarterly payments of Three Thousand Dollars ($3,000.00) each in said indenture of Trust provided for, such excess payments to be made to me in such amounts and at such times as in the exercise of their discretion they shall deem proper." On May 19, 1921, the day after the instrument was modified, she married Martin L. Straus. Two children were born of the marriage, Martin L. Straus III, born October 6, 1923, and Nancy May Straus, born January 31, 1925. On May 1, 1934, a divorce decree was entered, dissolving the bonds of matrimony between them. She married Samuel Marx on April 1, 1937. On November 12, 1937, plaintiffs, as trustees, filed their complaint in the circuit court of Cook county for the purpose of having the two instruments construed. The defendants, in addition to Florene May Marx, are her presumptive heirs at law, being her two minor children, her husband Samuel Marx, her mother Rosa May, her three brothers and her nieces and nephews. All defendants are of legal age, except the two children. The court appointed a guardian *ad litem* for the children. The answer of Florene May Marx admitted the allegations of the complaint and alleged that the sole purpose of the trust was to relieve her of the management of the property and not to give anyone other than her-

self any interest therein; that no other person whomsoever had any interest in any of the income derived from the trust estate during her lifetime, and prayed that plaintiff trustees be instructed that they had power and authority to pay her, in their discretion, all income theretofore or thereafter received by them in excess of $12,000 per year. The answer of the collateral heirs other than the trustees, admitted the execution of the instruments, claimed whatever rights they had thereunder, and joined in the prayer of the complaint for their construction. The answer of the minor children of Florene May Marx by their guardian *ad litem,* alleged that they had no information concerning the allegation of the complaint, submitted their rights and interests to the consideration and protection of the court, and demanded strict proof of the allegations of the complaint. In the trial court, the trustees assumed a wholly impartial attitude. The contest on the issues was between Florene May Marx on the one hand, and the guardian *ad litem* of her minor children and collateral heirs, on the other. The court decreed that the trustees had power and authority, in their discretion, to pay Florene May Marx, in addition to the quarterly income payments aggregating $12,000 per year, the whole or any part of the income derived from the trust estate and theretofore accumulated by the plaintiffs as trustees, and the whole or any part of the income which might thereafter be received by the plaintiffs as trustees. This appeal is prosecuted by the guardian *ad litem* and the collateral heirs for the purpose of reversing the decree.

The theory of Florene May Marx is that the words in the trust instrument of April 27, 1921, directing that in the event of her death prior to the termination of the trust, the corpus of the trust "shall descend to my heirs, as the law provides," were words of limitation and not of purchase, and created no remainder

interests, contingent or otherwise, in any of the defendants; that therefore, she was the sole beneficiary of the trust, and as such, had the power to modify or revoke without the consent of any other person.

The theory of appellants is that the words "my heirs, as the law provides," were words of purchase and not of limitation, and created a contingent remainder in her heirs at law, and therefore the original trust instrument was not legally modified by the supplementary trust of May 18, 1921, since the contingent remaindermen did not and could not consent thereto. In Perry on Trusts and Trustees (6th Ed.), sec. 104, p. 132, it is said:

"A trust once created and accepted without reservation of power can only be revoked by the full consent of all parties in interest; if any of the parties are not in being, or are not *sui juris,* it cannot be revoked at all. It is perfectly clear that where the settlor did not misapprehend the contents of the deed, and there was no fraud or undue influence, and no power of revocation was reserved, the settlor is bound though some contingency was forgotten and unprovided for." In the instrument we are considering, no express power to revoke or modify was reserved. Defendants invite attention to the fact that the first trust instrument vests the trustees with power to manage the property, to sell the same and reinvest the proceeds of the sale, and to invest the income, dividends and interest in high class securities. They also call attention to the part of the preamble which recites that the sole object of the trust insofar as she, the settlor, was concerned, was "to secure to myself a safe, steady and permanent income." Defendants say that a complete full legal title in fee to the trust estate was given to the trustees and the settlor retained only an equitable estate, and argue that appellants, who are members of the class of "heirs as the law provides" of settlor, necessarily

acquired their interests in the trust estate under the trust instrument, and not by "descent" through her. If, by the original trust instrument, appellants acquired a contingent remainder, it is manifest that their rights could not be affected by the subsequent instrument. Defendants emphasize the point that the trustees were given the full legal title in fee, with the right to sell, and maintain that if the interests of defendants in the trust estate arose solely by virtue of the trust instrument, then they took by purchase and not by limitation. The authorities which have considered this problem have first determined whether or not absolute legal title was conveyed to the trustees, and if such title was conveyed, have reasoned that any interests in the trust estate given to persons other than the settlor must necessarily have been acquired by purchase under the trust instrument rather than by limitation through the settlor as no interest could be acquired through the settlor since he had none, having conveyed or assigned to the trustees.

In the case of *Burton v. Boren,* 308 Ill. 440, it appears that Edward Boren owned in fee simple an undivided one-quarter of 350 acres of farm land, the other three-quarters being owned by his brother and two sisters. On October 1, 1913, he conveyed by deed of trust to his sister, Hannah E. Burton, his undivided one-quarter interest. The trustee was to pay the grantor all the net income received from the land. The trust deed gave the trustee or her successor power to lease or sell the property and convey the same by proper deed and reinvest the funds in other income producing real estate or loans, and to pay the net income to the grantor. The trust was to continue in force during the life of the grantor and should terminate at his death. Power was given to the trustee to appoint a successor, and in case she did not exercise the power a successor was to be appointed by the

court having jurisdiction to do so. The fourth provision of the trust read as follows: "Upon the death of the said Edward E. Boren, *cestui que trust,* the trust herein created shall cease and terminate, and when said trust is terminated the trust property, as the same may exist at the death of the said Edward B. Boren, whether consisting of real or personal property, shall immediately vest in and become the property of the heirs-at-law of the said Edward B. Boren, *cestui que trust* herein, and said heirs-at-law shall be entitled to said property under the laws of descent of the State of Illinois then in force." The trustee accepted and acted under the trust until January, 1922, when she filed a bill for an accounting, tendering her resignation as trustee, and asking that her report be approved, that she be discharged and her successor appointed. Boren answered the bill, admitted the correctness of the account, consented to her resignation and alleged that the reversion in the fee was in him; that the only interest conveyed by the deed was an estate during his life, and that no persons other than the trustee and himself had any interest in the trust property. He also filed a cross-bill and alleged that he was the owner of the reversion in fee, and that no other person except himself and the trustee had any right, title or interest in the property. He prayed that the trust be terminated and that the trustee be required to convey the property to him. Boren had two children and both were living when the proceedings were had. They disclaimed any interest and Hannah E. Burton, the trustee, demurred to the cross-bill. The court overruled the demurrer and she elected to abide by it. The Supreme Court said, p. 442:

"Counsel for appellant argue that appellee parted with all his title and interest in the trust property by the deed to the trustee except a beneficial equitable interest during his life and that the trust cannot be

terminated until his death, and when so terminated his heirs, to be then determined under the laws of descent, will become seized of the title to the trust property as purchasers under the deed of trust and not as heirs of appellee under the laws of descent. Appellee contends that the trust deed conveyed an estate to the trustee for and during the life of the grantor but the reversion in fee is in him, and that no other person than himself and the trustee have any interest in the trust property, and it was proper for the court to terminate the trust by its decree." It will be observed that the contentions are virtually the same as the contentions of the parties in the instant case. In the Burton trust instrument, as in the one before us, the trustee had the right to sell the property and reinvest the funds. Nevertheless, the court sustained the decree holding that the language constituted words of limitation and not of purchase. In the *Burton* case, the court continued, p. 442:

"There can be no question that under the decisions in *Akers v. Clark,* 184 Ill. 136; *Biwer v. Martin,* 294 id. 488, and *Hobbie v. Ogden,* 178 id. 357, the provision in clause 4 that on the death of appellee the property should immediately vest in and become the property of his heirs entitled to it under the laws of descent conferred no estate in remainder or of any other character on the heirs of appellee, or those who would be his heirs upon his death. In the *Akers* and *Biwer cases* it was held that where a grantor conveys a life estate with a remainder over to his heirs, the heirs do not take a remainder at all. The words 'heirs' will be regarded as defining or limiting the estate which the first taker has. In such case the heirs would take as reversioners by descent from the grantor and not under the deed. (1 Tiffany on Real Prop. sec. 130; 2 id. sec. 487.) The children of appellee disclaimed any interest in the property, but it is clear from the

decisions they had no interest, and never will have except as reversioners by descent from appellee. No other persons being interested in the trust except appellant and appellee, the question for decision appears to be narrowed to whether the court erred in terminating the trust.

''This court has held that where all the parties are capable of acting and desire a trust terminated, a court of equity may decree its determination. Appellant, the trustee in this case, does not wish to longer act in that capacity, tendered and requested the court to accept her resignation, and asked to be relieved from any further duties or responsibilities and that someone else be selected to act in her place. Appellee consents to the acceptance of appellant's resignation as trustee. So far as the interests of the children or heirs of appellee are concerned there is no obstacle in the way of a termination of the trust. Appellant contends appellee parted with all his interest by his deed to the trustee except the beneficial use of it during his life and for that reason the trust cannot be terminated. Under the decisions of this court referred to, he still has the reversion in fee, with right to grant it away. The trustee has no beneficial interest in the continuance of the trust.

''This case is unlike *Lawrence v. Lawrence,* 181 Ill. 248, where the trust deed directed the trustee to convey the property to the heirs of the creator of the trust. The court in that case held the trustee took whatever estate was necessary to enable him to carry out the trust,—even a fee simple, if required. In the case here under consideration the trustee was not directed to convey to the heirs. Whatever estate the heirs of appellee received would be by inheritance. The trustee was not required to sell the land and distribute the proceeds, but she was given authority to sell and hold the money received in trust or re-

invest it in other property on the same terms and conditions, but it was left to the judgment and discretion of the trustee whether to sell or not. Except a small tract sold by the trustee, and as to which no question is raised, the trustee has never exercised the power to sell. She is the sister of appellee and has appealed from the decree. In her brief she says she has no pecuniary interest in continuing the trust and desires to be released from its duties. She says her appeal is prosecuted solely for the purpose of defending the trust and for the protection of herself and her estate from any possible action of the heirs-at-law of appellee after his death."

In view of the fact that the instruments in the instant case were executed in the State of Missouri, both parties have emphasized decisions rendered by the Supreme Court of that State. In the case of *Stephens v. Moore,* 298 Mo. 215, the trust instrument provided that "upon my death this trust shall terminate and the trust shall pass to and vest in my legal heirs, or as may be directed by my will." The court found it was necessary for it to determine whether the settlor disposed of the entire fee "or in other words, whether he divested himself of the reversion expectant upon the termination of the trust for his life." The court said:

"It is accepted as one of the dogmas of the common law that, if one makes a limitation to another for life, with a remainder over, either mediately or immediately, to his heirs or the heirs of his body, the heirs do not take remainders at all, but the word 'heirs' is regarded as defining or limiting the estate which the first taker has, and his heirs take by descent, and not by purchase. . . . It is the generally accepted rule that, where there is a grant to one for life, with remainder to the heirs of the grantor, there is in fact no remainder; for the limitation, though denominated

a remainder, continues in the grantor as his old reversion and does not devolve upon his heirs as purchasers, as it would if it were a remainder, but as his heirs. . . . When the deed involved in this proceeding is considered as a whole, it seems very clear that the grantor had no thought of making a disposition of his estate to take effect at his death. The sole purpose was to provide for the handling and managing of his property during his own lifetime. The words, 'and the trust shall pass to and vest in my legal heirs, or as may be directed in my will,' is a mere statement, by way of further limitation of the trustee's estate."

Defendants call attention to the statement of the Missouri court in the *Stephens* case that it was "not necessary to take an estate of inheritance in order to enable him to perform all of the duties imposed upon him by the trust," but we do not deem that the language is controlling. It is apparent from the briefs that counsel on both sides made a thorough search of the authorities. We observe that the subject matter is touched on in the recent case of *Fleming v. Dillon,* 370 Ill. 325. We have examined the opinions and text books cited. However, no useful purpose will be served by a discussion of the distinguishing features of the recorded decisions. The determination in each case depends on the intent of the settlor as disclosed in the language used in the instrument. A careful consideration of the authorities and of the arguments presented by the respective parties convinces us that the defendants did not acquire any interest by virtue of the instrument of April 27, 1921. Florene May Marx retained the reversionary interest. Our opinion is that the words in the trust instrument of April 27, 1921, directing that in the event of her death prior to the termination of the trust, the "property shall descend to my heirs, as the law provides," are words of limita-

tion and not of purchase, and that they created no remainder interests, contingent or otherwise, in any of the defendants, and that therefore, she was the sole beneficiary of the trust and as such had the power at any time to revoke or modify without the consent of any other person. It follows that under the instrument of May 18, 1921, the trustees have authority to pay, in their discretion, to Florene May Marx all income received by them in excess of the required quarterly payments.

For the reasons stated, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.