## CENTRAL HANOVER BANK & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 120, Docket 20299.

Circuit Court of Appeals, Second Circuit.

Jan. 29, 1947.

Denis B. Maduro, of New York City, for petitioner.

Sewall Key, Acting Asst. Atty. Gen., and Robert N. Anderson, Muriel S. Paul, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The issue raised by this appeal is of the proper deduction from the gross estate of a deceased wife for property which she "received" by "bequest" from her husband who died less than five years before, and whose estate had paid an estate tax.[1] The facts were stipulated and are as follows. The husband died on April 11, 1937, leaving his wife as executrix and sole legatee; she died on March 5, 1941. She exercised the privilege granted her as executrix to suspend for a year the appraisal of his estate,[2] which was finally appraised at $3,421,672.81. Deductions amounting to $411,039.93 were allowed to fix the net estate; but there were other charges, for the most part taxes, which were not deductible, amounting to

[1] Title 26 U.S.C.A. Int.Rev.Code, § 812 (c).

[2] Title 26 U.S.C.A. Int.Rev.Code, § 811 (j).

$965,231.64. The net value of all the assets coming to the wife was therefore $2,045,-401.46. The administration of the estate being suspended, on October 21, 1937, the Probate Court on the wife's application directed her to distribute "to herself as sole legatee" personal property—shares of stock—which had an appraised value of $2,931,766.03; and in 1938 she distributed to herself the other personal property of the estate, appraised at $44,266.09. At the time of these distributions the husband's estate was still indebted in one way or another in the amount of $1,080,961.77, which the wife paid before she died. Certain of the assets so "received" by her have been identified as part of her estate: (1.) securities of the value of $2,341,421.90 (the appraised value for the husband's estate); (2.) the proceeds of life insurance policies amounting to $135,119.72; (3.) real estate of the value of $1090.

The wife's executor claimed a deduction of $2,477,631.62 for property taxed within five years, that being the sum of the three items just mentioned; but this the Commissioner cut down to $1,627,174.47 and assessed a deficiency accordingly. He allowed in full the proceeds of the insurance policies, and the value of the real estate, and the remaining item ($1,490,964.70) he arrived at in the following way. The value of all the shares of stock distributed to the wife was $2,931,766.60 and the debts then unpaid were $1,080,961.77, as we have already said: the proportion of the debts to these assets was therefore roughly 36⅓%. The Commissioner spread the debts equally over all the assets "distributed," and thought that the wife "received" by "bequest" only 63⅓% of each asset of distributed property. Since only $2,341,421,-90 of the shares bequeathed were identified in her estate he allowed her only 63⅓ of that sum. (Why he did not include in his computation $44,266.90 "distributed" in 1938 does not appear; but the difference is trifling and we will ignore it.) The question is whether by "identity" the statute means the physical identity of the asset, or the identity of the legatee's financial interest in it. The Tax Court held that the debts were in effect liens or charges upon all the husband's assets, to be ratably allocated; and that he bequeathed and could bequeath to his wife only an interest in each asset measured by its value less its proportion of the debts as a whole. If the debts were progressively paid, the interest of the wife in each of the remaining assets increased; therefore, when she "received" the shares of stock on October 21, 1937, the only interest "bequeathed" to her was that proportion of their value which was free of the debts then still unpaid; and when she paid the debts, she acquired a new interest by transfer.

It seems to us that this is the proper interpretation of the section. It is of no consequence whether the debts were liens in a formal sense upon the husband's assets; it is enough that, if the wife did not pay them, the creditors could follow them and sell them on execution.[3] The record is not clear, but apparently she used her own funds to pay the debts, and by so doing she acquired the creditors' interest which she had not had before, and which had never been bequeathed to her. On the other hand, if she sold some of the assets to pay the debts, the situation was the same: she parted with her bequeathed interest in those she sold and used the proceeds to secure the creditors' interest in the rest. We cannot see why either situation was different from an executor's sale of, or a creditor's levy upon, an asset before distribution was made. The result is confirmed if one considers the opportunity which would otherwise be offered to add to the privilege of suspending appraisal of the estate.[4] True, people do not usually order their affairs against the possibility that they may die within five years; but in the case of old legatees that might be a substantial motive, re-enforcing the choice of a year's suspension of appraisal. A legatee need do no more than take over the assets before paying the debts and pay the debts out of his own asstes, so far as he

---

[3] Davis v. Vansands, 45 Conn. 600, Fed.Cas.No. 3655; Mathewson v. Wakelee, 83 Conn. 75, 75 A. 93; Bidwell v. Beckwith, 86 Conn. 462, 85 A. 682.

[4] Title 26 U.S.C.A. Int.Rev.Code, § 811 (j).

could; or by a sale of some of the assets so far as he could not. He could thus increase the deduction allowable to his legatees upon whatever assets he chose to keep. Had Congress been aware of such a possibility, it can scarcely be doubted that it would have provided against it.

The taxpayer relies upon the decision of the First Circuit in Commissioner v. Garland,[5] and it must be owned that in principle it is to the contrary. The wife had there used income from her husband's estate arising after his death to pay charges upon it, yet her executor was allowed to deduct the full value of the identified assets. However, although, as has appeared, we ourselves cannot see what difference it makes from where the money comes, the First Circuit did see a difference, for it expressly reserved decision in a case where the legatee paid the debts with his own money, which so far as the record shows may have been what the wife did here. Moreover, Bahr v. Commissioner[6] is directly in our favor; we accept Judge Sibley's discussion, which indeed put the whole argument in a nutshell. It is true that in that case Frank's estate had not been administered when Eugene died, but it was Eugene's executor, not Frank's administrator c. t. a., who paid Frank's estate tax. We cannot understand how it could have made a difference if Eugene had lived long enough to pay the debts himself. There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen. That there are hazards in this is quite true; there are hazards in all interpretation, at best a perilous course between dangers on either hand; but it scarcely helps to give so wide a berth to Charybdis's maw that one is in danger of being impaled upon Scylla's rocks.

Order affirmed.

---

[5] 136 F.2d 82.

[6] 5 Cir., 119 F.2d 371.