ESTATE OF CHARLES C. HANCH, DECEASED, HAZEL M. HANCH, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30093. Promulgated October 27, 1952.

*James J. Costello, Jr., Esq.,* and *K. Raymond Clark, Esq.,* for the petitioner.
*Harold H. Hart, Esq.,* for the respondent.

FINDINGS OF FACT AND OPINION.

RAUM, *Judge:* The Commissioner of Internal Revenue determined an estate tax deficiency in the amount of $7,959.77 against the estate of Charles C. Hanch, who died on October 22, 1946. Several adjustments made by the Commissioner are no longer in dispute. The decedent's wife, Dorothy M. Hanch, had died intestate on August 9, 1945, and he became entitled to one-third of her estate. However, no distribution had been made to him prior to his death. As a result, two related issues are raised: (1) In determining the husband's gross estate, how much shall be included with respect to his interest in his wife's estate? (2) How shall the deduction for prior taxed property be computed under section 812 (c)? A third question for decision is whether a $20,000 award approved by an Illinois probate court to the decedent's adult daughter is deductible under section 812 (b) (5) of the Internal Revenue Code.

A stipulation of facts filed by the parties is hereby adopted as part of our findings and is incorporated herein by reference. Such additional facts as may be required for the disposition of this case will be stated in the course of the opinion.

1. The decedent's estate was valued as of October 22, 1947, one year after death, as permitted by section 811 (j) of the Code. The estate of the prior decedent (Dorothy) consisted primarily of corporate securities plus some cash; and distribution of the assets of her estate was made on December 18, 1946, more than a month after Charles' death. The securities composing Dorothy's estate on October 22, 1946, were as follows:

| Number of shares | Description of stock |
| --- | --- |
| 300 | Commercial Investment Trust Corporation |
| 3802 | May Department Stores Co. |
| 100 | Texas Gulf Sulphur Co. |
| 100 | Natomas Co. |
| 50 | Standard Brands, Inc. |
| 171 | National Distillers Products Corporation |
| 5000 | Crystal Silica Co. |

In the distribution that was made on December 18, 1946, Charles' estate did not receive precisely one-third of the shares of stock listed above. Rather, the distribution to his estate consisted of the following:

| Number of shares | Description |
| --- | --- |
| 300 | Commercial Investment Trust Corporation |
| 1000 | May Department Stores Co. |
| 100 | Texas Gulf Sulphur Co. |
| 100 | Natomas Co. |
| 50 | Standard Brands, Inc. |
| 57 | National Distillers Products Corporation |
| | Cash in the amount of $206.08. |

The first issue is whether the amount to be included in Charles' gross estate is one-third of the value of Dorothy's estate as it was composed on October 22, 1946, but valued as of October 22, 1947, or whether it is the value, as of October 22, 1947, of the specific assets distributed to Charles' estate on December 18, 1946. The amounts involved are not in dispute. The amount to be included if the first method is adopted is $64,274.44, but if it is computed under the second method it is $68,062.77.

The Commissioner insists that the first method must be employed. He points to section 811 (a), which requires the inclusion of all property "To the extent of the interest therein of the decedent at the time of his death." These provisions contemplate that the decedent's interest in property be determined as of the date of his death. And at Charles' death, he had a one-third interest in the undivided net assets of Dorothy's estate as it was then composed. That is the interest which must be included in his gross estate (cf. *Estate of Eugene L. Bender*, 41 B. T. A. 80, 83, affirmed, *sub nom. Bahr* v. *Commissioner*, 119 F. 2d 371 (C. A. 5), certiorari denied 314 U. S. 650), and it is that interest which is valued on the optional valuation date rather than the specific items that were distributed to Charles' estate after his death.

It is clear that the Commissioner's method operates to petitioner's advantage on this issue, and petitioner has resisted it only because of the possible adverse consequences that it might have on its deduction for prior taxed property. Although the matter may not be entirely free from doubt, we think that the Commissioner's method is correct.

2. Our decision on the first issue goes far towards resolving the second, namely, the amount to be allowed as a deduction to petitioner for previously taxed property under section 812 (c).[1] The deduction is allowable "only in the amount finally determined as the value of such property in determining the value of  *  *  *  the gross es-

---

[1] Internal Revenue Code:

SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

*        *        *        *        *        *        *

(c) PROPERTY PREVIOUSLY TAXED.—An amount equal to the value of any property (1) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent,  *  *  *  where such property can be identified as having been received by the decedent from  *  *  *  such prior decedent by  *  *  *  bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received.  *  *  *  This deduction shall be allowed only where  *  *  *  an estate tax imposed under this chapter or any prior Act of Congress, was finally determined and paid by or on behalf of  *  *  *  the estate of such prior decedent,  *  *  *  and only in the amount finally determined as the value of such property in determining the value of  *  *  *  the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate,  *        *.

tate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate &ast; &ast; &ast;."

The difference between the parties herein relates to the computation of the value of the property which was included in the gross estate of the prior decedent. If the "property" is to be regarded as the specific shares of stock plus the small amount of cash in fact distributed on December 18, 1946, then the value of such property as finally determined in the estate of the prior decedent was $60,802.96. On the other hand, if the "property" is to be regarded as one-third of the net assets of the prior decedent's estate, as it was composed on October 22, 1946, the value of one-third of such assets as finally determined in the gross estate of the prior decedent would be a lesser amount.

Petitioner contends that it is the amount of $60,802.96 that is the measure of the deduction. Its contention is closely related to its position on the first issue that the property which must be included in the gross estate of the second decedent consists of the specific securities and cash actually distributed after the death of the second decedent.

Section 812 (c) speaks of allowing the deduction only in the amount finally determined as the value of "such property" in determining the gross estate of the prior decedent and only to the extent that the value of "such property" is included in the gross estate of the second decedent. It seems plain to us that the term "such property," as used in section 812 (c) refers to the property that was properly included in the estate of the second decedent. And in this case that property, in accordance with our decision on the first issue, was one-third of the assets of the prior decedent's estate as it was composed on the date of death of the second decedent.

Accordingly, we must rule against the petitioner on this issue, and we hold that the deduction must be measured by one-third of the net assets of the prior decedent's estate as it was composed on October 22, 1946, but valued in the amount finally determined as the value of such assets in determining the gross estate of the prior decedent. However, we think that the method employed by the respondent in attempting to achieve this result was incorrect. His computation is set forth in the margin.[2]

---

[2] The computation of the deduction for property previously taxed is as follows:

| | | |
|---|---|---|
| Gross estate of Dorothy M. Hanch as finally determined | | $178, 439. 11 |
| Less: bank account in joint tenancy with daughter of Dorothy M. Hanch | | 469. 23 |
| | | $177, 969. 88 |
| Less: | | |
| Debts and charges | $8, 013. 55 | |
| Federal estate tax as finally determined | 23, 100. 86 | 31, 114. 41 |
| Net residue of estate | | $146, 855. 47 |
| One-third share of Charles C. Hanch | | 48, 951. 82 |
| Less: | | |
| State inheritance tax applicable to this decedent | | 575 .47 |

The difficulty with respondent's computation is that he takes the entire gross estate of the prior decedent as it existed at the time of the prior decedent's death, and undertakes to subtract therefrom debts, charges, and Federal estate taxes, in arriving at "net residue of estate," one-third of which he treats as the share of the second decedent. It is highly dubious whether such computation is consistent with the decision in *Estate of Edith P. Garland*, 46 B. T. A. 1243, affirmed *sub nom. Commissioner* v. *Garland*, 136 F. 2d 82 (C. A. 1). The correct computation, we think, requires respondent to take the securities that comprised Dorothy's estate as of October 22, 1946, value them as they were finally valued in determining Dorothy's gross estate, make adjustments for cash receipts and debts accrued to October 22, 1946 (such as were made in valuing these assets as of October 22, 1947), and then divide the result by three. Such computation is based upon Charles' one-third interest in the estate of Dorothy as it was composed on October 22, 1946, and does not run afoul of the decision in the *Garland* case. The valuations of the specific securities comprising Dorothy's estate as finally determined in determining her gross estate are contained in the stipulation filed by the parties herein, and by the use of such valuations the correct computation in this case can be made under Rule 50.

3. The third issue is whether a $20,000 award approved by an Illinois probate court to petitioner's adopted 48-year-old daughter, Hazel M. Hanch, is deductible under section 812 (b) (5) of the Code. The deduction is not available to the estate of any decedent dying after September 23, 1950, the date of enactment of the Revenue Act of 1950, which (by section 502) eliminated these provisions from the Code but left them applicable with respect to estates of decedents who had died theretofore. Section 812 (b) (5) allowed a deduction from the gross estate for amounts "reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent."

Hazel M. Hanch is the daughter of Dorothy M. Hanch; Charles M. Hanch adopted her in 1914 when she was 16 years old. At the time of the decedent's death, Hazel was unmarried and had resided with him and his wife since childhood; during the fifteen years prior to his death their residence was a ten-room apartment at 1400 Lake Shore Drive, Chicago, Illinois. Hazel was not gainfully employed, but she was in good health and was active in social affairs and charitable organizations.

Charles, Dorothy, and Hazel each had independent means. Their gross income for the years 1943-1945, as reported on their Federal income tax returns was as follows:

| | |
|---|---|
| Net value of decedent's interest | $48,376.35 |
| Amount of property previously taxed otherwise deductible | $48,376.35 |

| Year | Charles | Hazel | Dorothy |
|------|---------|-------|---------|
| 1943 | $15,337.38 | $4,168.75 | $8,582.60 |
| 1944 | 15,154.38 | 4,367.40 | 8,292.68 |
| 1945 | 16,413.71 | 5,308.39 | [1] 4,052.10 |

[1] To Aug. 9, 1945.

Dorothy had been an invalid for some eight years prior to her death on August 9, 1945, and Hazel's time and effort during this period were devoted entirely to the management of the household and care for her mother. During this period Hazel had paid servants' wages and part of the household expenses, and had also paid for sick-room supplies. On June 12, 1946, Charles gave Hazel a block of stock said to be worth about $20,000 in partial recognition of her contribution towards maintenance of the household and assistance to her mother.

Upon her mother's death, Hazel became entitled to two-thirds of her net estate, which was actually distributed in December 1946. She was also Charles' sole heir.

The annual living expenses of the decedent, his wife, and daughter, during 1943, 1944, and 1945 were about $25,000. The family employed two maids and a cook. The household furnishings were valued in the estate tax returns of Charles at $1,630.

Hazel continued to reside at 1400 Lake Shore Drive, Chicago, Illinois, for approximately one year after Charles' death, when she married and thereafter moved to California.

The "appraisers" appointed for the estate of Charles filed with the Probate Court of Cook County, Illinois, their award (dated January 6, 1947) to Hazel, consisting of family pictures, wearing apparel, jewels, and ornaments, as well as the sum of $20,000 for "support" for a period of nine months after the death of the decedent. The award was made pursuant to Ill. Rev. Stats. (1945), c. 3, secs. 330 and 331. The award was approved by the Probate Court on January 8, 1947. Payment of the aforesaid "child's award" was made by the decedent's estate in installments on January 16, January 24, May 23, and August 22, 1947, with a final payment of $265 on January 7, 1948. The estate of the decedent remained open until June 1949.

We hold that Hazel was not "dependent" upon the decedent within the meaning of section 812 (b) (5), and, in any event, that the award was not "reasonably required" for her support during the settlement of the decedent's estate. Hazel was about forty-eight years of age at the time of his death, and, although not gainfully employed, was in good health and active. She certainly was not legally a dependent of Charles. True, she had been making her home with her parents, but she had independent means, and there is no ground based upon ill health, poverty, or any other consideration, which could be urged as a reason for treating her as a legal dependent of Charles; nor has any

such ground been advanced by petitioner. This case is therefore sharply to be distinguished from those in which deductions have been allowed in connection with awards to decedents' widows or minor children, who, although having independent means in some cases, are nevertheless generally regarded as legally dependent upon their husbands or fathers. Cf. *Estate of Peter D. Middlekauff*, 2 T. C. 203; *Estate of Ralph Rainger*, 12 T. C. 483. It is quite immaterial that the award herein, euphemistically referred to in situations such as this one as a "child's award," was made in accordance with Illinois law. The question here is one of applying the Federal statute, and not even under Illinois law is it contended that Hazel was a dependent. The award was based merely upon those provisions of Illinois law which direct that when a decedent leaves no surviving spouse, "There shall be allowed to all children of the decedent under twenty-one years of age and all female children residing with him at the time of his death an award equivalent to a widow's and child's award * * *." Ill. Rev. Stats. (1945), c. 3, sec. 331.

Petitioner urges that since Hazel had in fact been residing with her parents, she was actually a dependent within the meaning of the Federal statute. It is far from clear that any such result would follow even if her parents had in fact furnished her support. But cf. *Estate of Daisy W. Jacobs*, 8 T. C. 1015. However, the record in this case does not contain satisfactory proof that her parents, and decedent in particular, did provide her with support. To be sure, she resided in their apartment. But she had been contributing substantial amounts for a number of years towards its maintenance. While it is true that the decedent felt a moral obligation to repay her for such contribution as well as for her efforts in caring for her mother, and actually did give her some securities in partial recognition of her contribution, the fact remains that she did help in shouldering the burden of running the household, and we cannot say, on this record, that she was in fact a dependent of the decedent. Hazel did not appear as a witness, and there is no satisfactory proof that, at the time of the decedent's death, Hazel was not paying her share of the expenses. We must rule that she was not "dependent upon the decedent," under section 812 (b) (5).

Moreover, even if it could be said that she was "dependent," we think the amount involved was not "reasonably required" for her support during the settlement of the estate. We have found that the annual living expenses of Charles, Dorothy, and Hazel during 1943, 1944, and 1945 were about $25,000, and the record suggests, and certainly does not satisfactorily show otherwise, that these expenses were met out of the combined incomes of all three of them. It must be remembered, furthermore, that at the time of the "child's award" herein, Dorothy's estate had already been distributed, with two-thirds

of it going to Hazel. Thus, at that time, Hazel not only had income from her own property, but also a newly acquired source of income from the estate of her mother. And, although the expenses of the entire family had formerly been about $25,000 a year, it seems clear that Hazel's requirements, merely for her own expenses, were considerably less. The "child's award" of $20,000 covered a 9-month period, and in about a year after Charles' death, Hazel was married. Taking all these facts into account, we are convinced that the $20,000 award was not "reasonably required" for Hazel's support. She was Charles' sole heir, and the award had the effect merely of distributing a portion of his estate to her.

4. The petition for review seeks an additional deduction to the estate for attorneys' fees in these proceedings. Although this matter has not been discussed by the parties, the deduction is available under the statute, and if the parties can agree upon the amount involved, it will be taken into account in the computation under Rule 50; otherwise, it may be considered under Rule 51.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: It is stipulated that the sums in question were actually paid out by petitioner for the daughter's support. See Regs. 105, sec. 81.40. The other statutory condition that they be also "reasonably required" to fulfill the daughter's "standard of living" is met at least prima facie by the court order requiring the executors to make payments, as here they actually did. *Mary M. Buck et al., Executors,* 25 B. T. A. 780, 791, reversed on other grounds, (C. A. 9) 73 F. 2d 760. And the other reasons given for reaching the same result are, in my view, untenable. Notwithstanding the temporary nature of the question, in view of the amendments contained in the Revenue Act of 1950, they should not be regarded as a sound justification for the position taken.

The daughter was, under the decided cases, as much a dependent in the legal sense as a wife or minor child. In *Estate of Daisy W. Jacobs,* 8 T. C. 1015, we held by implication that if it could be shown that the surviving husband of a deceased wife had actually been supported by the wife, he could, although an adult, be treated as a dependent under the Federal statute. "The fact that the widow had income of her own and did not have to have the allowance made by the Probate Court is beside the question." *Estate of Peter D. Middlekauff,* 2 T. C. 203. See also *Estate of Ralph Rainger,* 12 T. C. 483.

Since the showing here is adequate that the daughter did in fact live with decedent and was in fact dependent in the sense in which that term has been used in other cases construing this statute, I am forced to note my dissent on the final issue.