ESTATE OF ROSWELL G. ACKLEY, CLARE T. ACKLEY AND GLEN F. ACKLEY, CO-EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40034. Filed January 18, 1955.

*John Potts Barnes, Esq.,* for the petitioners.
*Paul Levin, Esq.,* for the respondent.

RICE, *Judge:* This proceeding involves a deficiency in Federal estate taxes of $35,758.79 determined against. the Estate of Roswell G. Ackley.

The sole issue is the proper amount of a deduction for previously taxed property, as provided in section 812 (c) of the Internal Revenue Code of 1939,[1] allowable to the estate of the decedent who died within 5 years after the death of his brother and who was the brother's sole legatee.

The parties have stipulated that the petitioners will incur and pay additional administration and litigation expenses, and attorney's fees, not heretofore allowed, in connection with the determination of the decedent's net estate subject to tax, and that the amount thereof will be taken into account under a Rule 50 computation.

All of the facts were stipulated and are adopted as a part of our findings. Only such facts as are necessary to an understanding of the issue will be summarized herein.

Roswell G. Ackley died on November 6, 1947, and the petitioners are the duly appointed executors of his estate. The Federal estate tax return was filed with the collector of internal revenue for the first district of Illinois.

Decedent was the brother and sole legatee of Richard C. Ackley (hereinafter referred to as Richard) who died testate on October 2, 1944, less than 5 years prior to decedent's death. Decedent was also the duly appointed executor of Richard's estate, which consisted of a one-half interest in Ackley Brothers, a partnership owned by the two

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(c) PROPERTY PREVIOUSLY TAXED.—An amount equal to the value of any property (1) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, or (2) transferred to the decedent by gift within five years prior to his death, where such property can be identified as having been received by the decedent from the donor by gift, or from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. Property includible in the gross estate of the prior decedent under section 811 (f) and property included in total gifts of the donor under section 1000 (c) received by the decedent described in this subsection shall, for the purposes of this subsection, be considered a bequest of such prior decedent or gift of such donor. This deduction shall be allowed only where a gift tax imposed under Chapter 4, or under Title III of the Revenue Act of 1932, 47 Stat. 245, or an estate tax imposed under this chapter or any prior Act of Congress, was finally determined and paid by or on behalf of such donor, or the estate of such prior decedent, as the case may be, and only in the amount finally determined as the value of such property in determining the value of the gift, or the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate, and only if in determining the value of the net estate of the prior decedent no deduction was allowable under this subsection, section 861 (a) (2), or the corresponding provisions of any prior Act of Congress, in respect of the property or property given in exchange therefor.

\* \* \* \* \* \* \*

brothers. The partnership assets were comprised principally of real estate, bank accounts, and Government bonds.

On December 18, 1945, the Federal estate tax return for Richard's estate was filed. The return showed a gross estate of $942,672.35, and allowable deductions for debts and charges of $28,199.93. The estate paid Federal estate taxes of $243,444.34; the Illinois inheritance tax paid was $55,565.98.

On January 24, 1946, Richard's estate was closed and decedent transferred to himself all of its assets.

Richard's estate, throughout the course of its administration, earned net income of not less than $56,996.31 after claimed depreciation of not less than $19,784.18.

On decedent's estate tax return, $839,275.79 was claimed as the deduction for property previously taxed in Richard's estate. The parties herein have now agreed that the maximum value of such previously taxed property included among the assets of decedent's estate is $675,834.96.

The respondent determined, as follows, that the deduction allowable to decedent's estate for property previously taxed in Richard's estate was $615,462.10:

| | | |
|---|---:|---:|
| Gross estate of Richard C. Ackley | | $942,672.35 |
| Less: | | |
| Debts and charges | $28,199.93 | |
| Federal estate tax | 243,444.34 | |
| Illinois inheritance tax | 55,565.98 | 327,210.25 |
| | | $615,462.10 |

The theory on which the respondent has based his determination is that the decedent, as sole legatee of Richard, could not have received more than the net value of Richard's estate after deduction of charges and debts outstanding against it, and taxes.

The petitioners dispute this determination, and claim that the deduction for previously taxed property should be allowed in the amount of $675,834.96—the value of assets in decedent's estate actually identified as having been included in Richard's estate. They argue (1) that to the extent income of Richard's estate was used to pay claims against it, and taxes, and thus freed assets for distribution to decedent, the value of such assets should be included in determining the property-previously-taxed deduction; (2) that the Illinois inheritance tax is not chargeable against Richard's estate, but against decedent on his right of succession; and (3) that Federal estate taxes should not be taken as a deduction from Richard's gross estate in arriving at its net value here, since such taxes are not a deduction in determining its *taxable* net value.

The petitioners observe, on brief, that the issue raised here has been before us a number of times, but that the cases are in conflict. In support of their argument, petitioners cite *Estate of Edith P. Garland*, 46 B. T. A. 1243 (1942), aff'd. 136 F. 2d 82 (C. A. 1, 1943) ; *Thomas* v. *Earnest*, 161 F. 2d 845 (C. A. 5, 1947) ; *Estate of Charles C. Hanch*, 19 T. C. 65 (1952) ; and a Memorandum Opinion of this Court. They recognize that our opinions in *Estate of Eugene L. Bender*, 41 B. T. A. 80 (1940), affirmed sub nom. *Bahr* v. *Commissioner*, 119 F. 2d 371 (C. A. 5, 1941), certiorari denied 314 U. S. 650 (1941) ; and *Estate of Ada M. Wilkinson*, 5 T. C. 1246 (1945), affirmed sub nom. *Central Hanover B. & T. Co.* v. *Commissioner*, 159 F. 2d 167 (C. A. 2, 1947), certiorari denied 331 U. S. 836 (1947) ; as well as *McCarthy* v. *Delaney*, 76 F. Supp. 471 (D. Mass., 1948) ; and *Edith Bloedorn* v. *United States*, 126 Ct. Cl. 591, 116 F. Supp. 133 (1953), certiorari denied 347 U. S. 954 (1954), support the respondent's position.

In the *Bender* case, two brothers, Frank and Eugene, died within a year. They had been business partners; and Eugene, the second brother, was the executor and also the sole legatee of Frank, except for the community interest of Frank's wife. At the time of his death, Eugene had filed an estate tax return for Frank's estate, but had not paid the tax. Eugene's estate claimed a deduction for property previously taxed to the extent of all of Frank's assets held by it, and also a deduction for itself of such liabilities of Frank's estate as remained unpaid. In determining the deduction for property previously taxed allowable to Eugene's estate, the Commissioner applied the same method he used here—viz, allowable deductions, Federal estate and State inheritance taxes were deducted from Frank's gross estate and the net value of the estate remaining was allowed as the deduction for property previously taxed in Eugene's estate. We upheld the Commissioner's determination and were affirmed by the Court of Appeals for the Fifth Circuit.[2]

In the *Garland* case, a wife died less than 5 years after her husband. She was his executrix and the sole legatee of his estate. At her death there were unpaid taxes and other debts of the husband's estate of $14,031.50. Her estate contained assets from her husband's estate of $567,224.95 and claimed this amount as the deduction for property previously taxed. The respondent, in determining such deduction, applied the same method as he had in the *Bender* case and here, and determined that the husband's net estate after allowable deductions and taxes was $517,642.27. Her estate conceded that the $14,031.50 of unpaid liabilities of her husband's estate should be deducted from the $567,224.95 of its assets. It argued, however, that the remaining $35,551.18 difference, then remaining between the husband's assets held by it and the value of his net estate determined by the Commis-

---

[2] *Bahr* v. *Commissioner, supra.*

sioner, came from income and capital gains of the husband's estate; and, that to the extent that such funds had been used to pay taxes and indebtedness of the estate, thus freeing other assets of the husband then held by the wife's estate, those assets should be included in computing the property-previously-taxed deduction because they were actually held in the wife's estate and no indebtedness of the husband was outstanding against them.

We accepted that argument and said, 46 B. T. A. at p. 1245:

The deduction allowed [by the statute] is the value at which the property was taxed in the estate of the prior decedent, to the extent of its value in the present estate, reduced by the amount of any mortgage or lien thereon allowed as a deduction to the prior estate. There is no provision anywhere in the statute that the deduction allowable to the second decedent's estate must be reduced by any and all obligations of the estate of the prior decedent. * * *

The Court of Appeals for the First Circuit affirmed [3] and distinguished the *Bender* case on the ground that all that Eugene's estate got there was a claim against Frank's estate, while in the *Garland* case, the wife's estate had specific items of property from her husband.

We reaffirmed our holding in the *Garland* case in a subsequent Memorandum Opinion; [4] and, in *Estate of Charles C. Hanch, supra*, we refused to permit the Commissioner to apply the method used herein in determining the property-previously-taxed deduction because it was "highly dubious whether such computation is consistent with the" *Garland* decision. We required him to make adjustments for cash receipts and debts of the prior estate.

In the *Wilkinson* case, a wife, who died less than 5 years after her husband, held assets from his estate, at the time of her death, far in excess of the net value of his estate. She was the executrix and residuary legatee of his estate, and had paid debts and taxes thereon from her own funds. Her estate claimed a property-previously-taxed deduction in the amount of the specific assets from her husband's estate, which it held. The respondent contended that to the extent that debts and taxes of the husband's estate had been paid by the wife from her own funds, she was a purchaser of the assets of his estate. We agreed and limited the property-previously-taxed deduction to the net value of the assets from the prior estate. The Court of Appeals for the Second Circuit affirmed our decision,[5] and said, 159 F. 2d at p. 169:

The taxpayer relies upon the decision of the First Circuit in Commissioner v. Garland, [citation] and it must be owned that in principle it is to the contrary. The wife had there used income from her husband's estate arising after his death to pay charges upon it, yet her executor was allowed to deduct the

---

[3] *Commissioner* v. *Garland, supra.*

[4] *Constance C. Churchill, et al.,* Docket Nos. 109586–109589, inclusive, entered March 23, 1944.

[5] *Central Hanover B. & T. Co.* v. *Commissioner, supra.*

full value of the identified assets. However, although, as has appeared, we ourselves cannot see what difference it makes from where the money comes, the First Circuit did see a difference, for it expressly reserved decision in a case where the legatee paid the debts with his own money, which so far as the record shows may have been what the wife did here. Moreover, Bahr v. Commissioner [citation] is directly in our favor; * * * We cannot understand how it could have made a difference if Eugene had lived long enough to pay the debts himself. There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure. * * *

The rationale of these decisions was followed in *McCarthy* v. *Delaney, supra,* a case not factually distinguishable from the *Garland* case, and in which the *Garland* case was specifically rejected. It was likewise followed by the Court of Claims in *Edith Bloedorn, supra,* which is indistinguishable factually from the *Wilkinson* case.

In each of these cases, we and other courts have allowed the statutory deduction for previously taxed property to such extent as we understood Congress intended to grant it. Obviously, there has not been unanimity of opinion in what the courts thought Congress meant.

We have examined carefully the legislative history of section 812 (c) of the Code but find that it affords no help in resolving the problem herein presented.

However, despite what we have said in times past, we are now satisfied that all that Congress intended to exempt from tax was so much of a prior decedent's net estate as might be identified in the estate of a subsequent decedent who died within 5 years.

Congress could have spelled out the extent to which the deduction would be allowed in terms so specific that the problem presented here need not have arisen. But, we agree with the Court of Appeals for the Second Circuit that "Had Congress been aware of" the possibility of extending the deduction beyond the value of the first decedent's estate after claims and taxes against it had been satisfied therefrom, "it can scarcely be doubted that it would have provided against it." [6] Moreover, as the Court of Claims observed in *Edith Bloedorn* v. *United States, supra,* 126 Ct. Cl. at p. 594:

We do not think that Congress had any intention of discriminating in favor of a well-financed heir, merely because he was so well-financed that he could not only pay out of his own funds the tax on the estate of the first decedent, but would not find it necessary, over a five-year period, to reimburse himself for the money so paid. If it did so intend, it must have been willing to permit a substantial loss of revenue, in cases such as the instant one, without any possible reason based upon either fairness, convenience of administration, or expediency, to justify the loss. We think it would be unfair to the legislature to attribute to it an intention which could only be described as erratic.

[6] *Central Hanover B. & T. Co.* v. *Commissioner, supra,* 159 F. 2d at p. 169.

Whatever distinction we once thought we saw between the situation presented to us in the *Garland* case and that in the *Bender* and *Wilkinson* cases, we no longer see. The problem is no different in principle whether all claims and taxes against the first decedent's estate were paid from estate assets, from estate income and capital gains, or by the second decedent from his own funds.[7]

As we mentioned earlier, petitioners argue that even though the deduction for previously taxed property is limited to the net value of Richard's estate, Illinois inheritance taxes and Federal estate taxes are not proper deductions in determining that estate's net value for such purpose.

Illinois inheritance taxes, as petitioners have argued and as its Supreme Court said in *First Nat. Bank of Chicago* v. *Hart*, 383 Ill. 489, 50 N. E. 2d 461, 464 (1943), "are taxes upon the right of succession and do not constitute an estate tax. [Citations.]" That court, in *Board of Regents of University of Wisconsin* v. *State*, 404 Ill. 193, 88 N. E. 2d 489, 493 (1949), appeal dismissed 339 U. S. 906 (1950), further described the nature of the tax:

After a careful analysis of the many cases cited and the provisions of the statute involved herein, the rule seems to be settled that the right to receive an Illinois legacy is a creature of the State of Illinois; that the State's right to the amount of the tax vests at the moment of the death of decedent and is equal to that of legatees; that the tax is extracted from the legacy before it passes and therefore the tax as assessed here is not a direct burden upon the [legatee] * * * even though it incidentally reduces the legacy.

It is thus apparent from the nature of the Illinois tax that it is one which, for purposes of the Federal statute, reduces the over-all net value of the first estate and must be deducted in determining the amount of the deduction for property previously taxed under section 812 (c).

We do not understand that petitioners expressly claim that State inheritance taxes on Richard's estate were paid by decedent from his own funds. Had this been so, decedent would have been a purchaser of Richard's assets to the extent of such payment.

The only authority which petitioner cites for excluding the Federal estate tax on Richard's estate as a deduction in determining its net value for purposes of the property-previously-taxed deduction here is *Thomas* v. *Earnest, supra*. We decline to follow the Court of Appeals for the Fifth Circuit in that part of their opinion which so holds. It is incompatible with the basic concept of the deduction which Congress has provided in section 812 (c). We think they were right in *Bahr* v. *Commissioner, supra*. See *Edith Bloedorn* v. *United States, supra*.

---

[7] See Rudick, "The Estate Tax Deduction for Property Previously Taxed." 53 Col. L. Rev. 761 (June 1953).

We conclude that the respondent correctly determined the deficiency here in issue. Pursuant to the parties' agreement that additional litigation expenses, administration costs, and attorney's fees are to be allowed as deductions in computing decedent's net estate,

*Decision will be entered under Rule 50.*

Reviewed by the Court.