ESTATE OF MARY LOIS K. MCINTOSH, DECEASED, RUSSELL L. MCINTOSH AND EMPIRE TRUST COMPANY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF MARY LOIS K. MCINTOSH, DECEASED, RUSSELL L. MCINTOSH AND ST. LOUIS UNION TRUST COMPANY, TRUSTEES AND TRANSFEREES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF MARY LOIS K. MCINTOSH, DECEASED, EUGENE KILPATRICK PERRY, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51124, 51125, 51130.    Filed January 18, 1956.

*Arthur M. Conley, Esq.,* and *Frederick Pope, Jr., Esq.,* for the petitioners in Docket Nos. 51124 and 51125.

*Raymond A. Carter, Esq.,* and *Sidney D. Rosoff, Esq.,* for the petitioner in Docket No. 51130.

*James R. McGowan, Esq.,* for the respondent.

OPINION.

TIETJENS, *Judge:* Respondent seeks to include in the estate of Mary Lois K. McIntosh the value of the property transferred in trust in 1929, on the ground that decedent was in reality the settlor of the trust and its only beneficiary, and as such she had the power to revoke the trust. Sec. 811 (d) (2), I. R. C. 1939.[1] Another ground for inclusion asserted by respondent is that decedent's relinquishment of the power given her in the deed of trust, of naming in her will the parties to receive the trust property on her death (power of appointment), was in contemplation of death. Sec. 811 (d) (2). In opposition petitioner contends that (a) decedent was not the settlor of record of the trust and therefore under Missouri law could not exercise any of the rights of a settlor, and (b) even if petitioner were to be regarded as the settlor, the trust property is not includible in her estate as a revocable transfer under section 811 (d), citing *Helvering* v. *Helmholz,* 296 U. S. 93 (1935).

There is no question that the property placed in trust belonged solely to the decedent, and the parties have stipulated that Boland was a

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*     *     *     *     *     *     *

(d) REVOCABLE TRANSFERS.—

*     *     *     *     *     *     *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph ;

nominal settlor. The purpose of using Boland was to avoid the prohibition under the law of Missouri against a settlor's establishing a spendthrift trust for his own benefit. Under these circumstances there is little room for seriously contesting that decedent was the real settlor of the trust set up in 1929 (1 Scott, The Law of Trusts (1939), sec. 156.3; Griswold, Spendthrift Trusts (2d ed., 1947), sec. 487), and that for purposes of applying a Federal taxing statute the transfer in trust should be considered as having been made by decedent. *Newberry's Estate* v. *Commissioner*, (C. A. 3, 1953) 201 F. 2d 874, 876, 877; *Estate of Grace D. Sinclaire*, 13 T. C. 742 (1949).

Whether the trust was revocable depends on the law of the place of its creation—Missouri. *Blair* v. *Commissioner*, 300 U. S. 5 (1937). The revocability of a spendthrift trust of which the settlor was also the beneficiary was in question in *Stephens* v. *Moore*, 298 Mo. 215 (1923), 249 S. W. 601. In that case the plaintiff's mother being concerned lest plaintiff mismanage his inheritance arranged for his setting up a spendthrift trust upon reaching majority. Plaintiff transferred certain real and personal property to a trustee, who was to hold the property for the benefit of the settlor and was to have complete control and management of it. The net proceeds from the trust property were to be paid over to the settlor annually. The deed of trust contained no express power of revocation. The disposition of the trust property after the settlor's death was provided in the following terms:

Eleventh. Upon my death this trust shall terminate and the trust shall pass to and vest in my legal heirs, or as may be directed in my will.

About 2½ years after the creation of the trust the settlor brought an action in equity to revoke the trust and to compel a reconveyance of the trust property. The Supreme Court of Missouri in holding the trust revocable by the settlor reaffirmed its adherence to the principle that "a completely executed trust, even though it be a voluntary one, without reservation of power of revocation, can only be revoked by consent of all the beneficiaries." In ascertaining who the beneficiaries of the trust were the court sought to determine whether the settlor had disposed of the entire fee in the trust property by disposing of the interest remaining after his death. It held that the trustee did not take an estate of inheritance under the deed of trust, since such an estate was not necessary to enable him to carry out his duties which consisted of managing the trust property; and no remainder interest, vested or contingent, was created in the settlor's heirs by the provision of the trust deed relating to the disposition of the trust property upon the settlor's death. On the latter point the court said (p. 604):

It is the generally accepted rule that, where there is a grant to one for life, with remainder to the heirs of the grantor, there is in fact no remainder; for the

limitation, though denominated a remainder, continues in the grantor as his old reversion, and does not devolve upon his heirs as purchasers, as it would if it were a remainder, but as his heirs. 23 R. C. L. 516; Akers v. Clark, supra. [184 Ill. 136, 56 N. E. 296.]

Considering the whole deed of trust the court could find no indication of an intention on the settlor's part of making a disposition of his estate to take effect at his death. It therefore concluded that the settlor was the only beneficiary of the trust, and that consequently the trust was revocable. Further, the court felt that the nature of the trust was such, it granted the trustee the powers only of an agent, and as the grant was not coupled with an interest or supported by independent consideration, it was revocable at the grantor's pleasure.

*Stephens* v. *Moore* was subsequently cited with approval for the principle that a trust may be revoked with the consent of all the beneficiaries in *Ketcham* v. *Miller*, 37 S. W. 2d 635, 640 (1931), and in *Krause* v. *Jeannette Inv. Co.*, 333 Mo. 509 (1933), 62 S. W. 2d 890, 895. See generally 3 Scott, The Law of Trusts (1939), secs. 338, 339; 2 Restatement of the Law of Trusts (1935), sec. 337. As to the nature of the interests created by language like that in paragraph eleventh of the deed of trust in *Stephens* v. *Moore*, the law of Missouri, so far as we can ascertain, continues to be that in the absence of a showing of a contrary intention no interest is created in the grantor's heirs. *Davidson* v. *Davidson*, 350 Mo. 639 (1943), 167 S. W. 2d 641; and note: "The Doctrine Of Worthier Title In Missouri," 1952 Washington University Law Quarterly 117. See generally 1 Scott, The Law of Trusts (1939), sec. 127.1; I American Law of Property (1952), sec. 4.19.

Insofar as the revocability of the trust in question here, we see no material difference between this case and *Stephens* v. *Moore*, *supra*. Here, as we see it, the trustees took no estate of inheritance; their interest as trustees was to last only during the life of the settlor, except as to any portion of the trust property going to minor heirs of the settlor. This they were to continue to administer as trustees during the minority of such heirs. Provision for the disposition of the trust property upon the settlor's death was made in the following language:

On the death of said Mary Lois K. Perry, the trust hereby created shall end, and the entire trust estate created by this instrument, together with any and all accumulated and undistributed income therefrom, shall go to such parties and under such terms and conditions as the said Mary Lois K. Perry may, by her last will, direct. In the event that the said Mary Lois K. Perry shall die intestate, or should fail to exercise said power by her last will, then, on her death, the entire trust estate hereby created, together with any and all accumulated and undistributed income therefrom, shall go and pass to the then heirs at law of the said Mary Lois K. Parry [sic], under the statutes of descent and distribution of the State of Missouri, free of any trust, whatever, * * *

The quoted language of itself created no interest in the trust property in the settlor's heirs (*Stevens* v. *Moore, supra*); and there does not otherwise appear an intention on the decedent's part to provide her heirs with such an interest at the time the trust was created. It is apparent from the circumstances of the creation of the trust that her primary purpose was to put certain of her property out of her power to deal with it in order to protect it from claims of creditors. While this purpose is not inconsistent with an intention to provide her heirs with an interest in the trust property, the only indication we have of decedent's intention, at the time the trust was created, as to the disposition of the trust property upon her death is the language used in the deed of trust; and this, as we have already pointed out, did not have the effect under Missouri law of creating an interest in her heirs.

We therefore hold that decedent was the only beneficiary under the trust created in effect by her in 1929, and consequently she had the power to revoke the trust under Missouri law. The value of the trust property is therefore includible in her estate under section 811 (d) (2). *Vaccaro* v. *United States*, (C. A. 5, 1945) 149 F. 2d 1014; *Howard* v. *United States*, (C. A. 5, 1942) 125 F. 2d 986; *Estate of Felicie Gumbel Keiffer*, 44 B. T. A. 1265 (1941), petition for review dismissed on motion, C. A. 5, October 14, 1942.

Petitioners point to the fact that the deed of trust made provision for keeping in trust any portion of the trust property passing to decedent's minor heirs during their minority, as an indication of an intention on decedent's part to create an interest in the trust property in her son at the time the trust was created. We fail to see in this provision an indication of the intention sought to be derived from it by petitioners. To us it indicates no more than that petitioner wanted to be certain that if any of the trust property should go to a minor heir, it would be properly cared for during minority. This is not to say that at the time the trust was created decedent wanted to put out of her power of disposition the interest in the trust property remaining after her death by then creating an interest in her son or heirs.

Another circumstance pointed to by petitioners as indicative of decedent's intention to provide her heirs with an interest in the trust property is her relinquishment of her power of appointment in 1943. This argument, it seems to us, avails petitioners nothing. The relinquishment was made in the hope of preventing the value of the trust property from being included in decedent's estate at death and thereby to save estate taxes. Even if we should conclude that at this time, in 1943, decedent intended that she should not during her lifetime have a power of disposition of the interest in the trust property remaining after her death, we should also have to conclude that in giving up her power of appointment decedent also gave up the power of revocation

she had prior to that time, and that this was in contemplation of death within the meaning of section 811 (d) (2), since, as we shall later point out, under our decisions a transfer motivated solely by a desire to avoid estate taxes is in contemplation of death.

Finally, petitioners contend that the Supreme Court's ruling in *Helvering* v. *Helmholz*, 296 U. S. 93 (1935), requires the conclusion here that the trust was not revocable by petitioners. In that case the trust instrument provided that the trust could be terminated upon delivery to the trustee of a written declaration, signed by all of the then beneficiaries, declaring the trust at an end. The Commissioner contended that this provision gave the decedent, who was one of the settlors of the trust and an income beneficiary of it during her life, a power to revoke or amend the trust which she could exercise with others within the meaning of section 302 (d) of the Revenue Act of 1926. The Supreme Court denied the Commissioner's contention. It held that his

argument overlooks the essential difference between a power to revoke, alter or amend, and a condition which the law imposes. The general rule is that all parties in interest may terminate the trust.[3] The clause in question added nothing to the rights which the law conferred. Congress cannot tax as a transfer intended to take effect in possession or enjoyment at the death of the settlor a trust created in a state whose law permits all the beneficiaries to terminate the trust.

[3] Restatement of the Law of Trusts, Secs. 337, 338. We are referred to no authority to the contrary in Wisconsin, the place of the transaction.

Applying *Helvering* v. *Helmholz* here petitioners argue that if we determine the trust was revocable by decedent under Missouri law, such a power of revocation is one conferred by law and hence not one that requires inclusion of the value of the trust property in decedent's estate. We think this contention is best answered by the following quotation from *Commissioner* v. *Allen*, (C. A. 3, 1939) 108 F. 2d 961, 965, certiorari denied 309 U. S. 680 (1940), explaining the meaning of the above holding in *Helvering* v. *Helmholz, supra.*

The respondent misinterprets the meaning of the Helmholz case where the court said that the Government's "argument overlooks the essential difference between a power to revoke, alter, or amend, and a condition which the law imposes". [296 U. S. 93, 56 S. Ct. 70, 80 L. Ed. 76.] What the court was there pointing out was that the power in the beneficiaries, as such, to revoke a trust was a legal right[3] which they also enjoyed without any grant in the premises from the settlor. The power, therefore, could not be one reserved to the settlor, as such, within the contemplation of Sec. 302 (d) of the Estate Tax Act of 1926. Otherwise, Congress would be attempting to tax, as a part of a deceased settlor's estate, in States where beneficiaries have the legal right to terminate a trust, property with which the settlor had irrevocably parted in his lifetime, so far as any power, on his part as settlor, to terminate the trust was concerned. This, of course, Congress could not do without violating the Fifth Amendment of the

[3] Restatement of the Laws of Trusts, Secs. 337, 338.

Constitution, U. S. C. A.; and, an intent so to do was not to be imputed to Congress by adopting the construction of Sec. 302 (d) of the Estate Tax Act of 1926 for which the Government was contending in the Helmholz case. The thing of importance in the Helmholz case was that the power of revocation there *rested with the beneficiaries and not with the settlor as such.* The ruling in the Poor case [*White* v. *Poor*, 296 U. S. 98 (1935)] so implies. In the latter case, the trustees did not have a power to revoke conferred by law as did the beneficiaries in the Helmholz case. The trustees' power to revoke in the Poor case came from the trust indenture alone. Yet, the result in the Poor case was the same as in the Helmholz case. Neither the Helmholz case nor the Poor case distinguishes between a settlor's power to revoke when imposed by law and a settlor's like power when reserved by his trust indenture. [Emphasis supplied.]

An additional reason asserted by respondent for including the value of the trust property in decedent's estate is that decedent's release in 1943 of the power to name the ultimate beneficiaries of the trust property was in contemplation of death within the meaning of section 811 (d) (2). We have found as a fact that decedent's dominant motive in releasing her power of appointment was to save estate taxes. The circumstances of the release amply support this conclusion. By letter of May 27, 1943, decedent was advised by the St. Louis Union Trust Company, one of the trustees under the trust, that because of recent changes in the Federal tax law her possession of a power of appointment could cause the value of the trust property to be included in her estate for estate tax purposes. Subsequently, by letter of June 23, 1943, decedent's husband was advised by a lawyer that decedent would have to give up the power of appointment to keep the value of the trust property from being included in her estate under the amendments to section 811 (f) of the Internal Revenue Code of 1939 made by the Revenue Act of 1942, and acting on this advice she executed the release dated November 4, 1943.

We have previously held that a transfer motivated solely by a desire to avoid estate taxes was in contemplation of death. *Estate of Frank A. Vanderlip*, 3 T. C. 358 (1944), affd. (C. A. 2, 1946) 155 F. 2d 152, certiorari denied 329 U. S. 728 (1946). See also *Slifka* v. *Johnson*, (C. A. 2, 1947) 161 F. 2d 467, certiorari denied 332 U. S. 758 (1947); *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, (W. D., Pa., 1943) 50 F. Supp. 949, affirmed per curiam (C. A. 3, 1943) 137 F. 2d 653, certiorari denied 321 U. S. 764 (1944); *First Trust & Deposit Co.* v. *Shaughnessy*, (C. A. 2, 1943) 134 F. 2d 940, certiorari denied 320 U. S. 744 (1943); *Farmers' Loan & Trust Co.* v. *Bowers*, (C. A. 2, 1938) 98 F. 2d 794, certiorari denied 306 U. S. 648 (1938). The foregoing cases require the same result here. The fact that decedent thought her relinquishment of the power would result in nontaxability does not, of course, alter this result.[2] Nor does the fact found by us

---

[2] Section 403 (d) (3) of the Revenue Act of 1942 (56 Stat. 944) and section 2 (a) of the "Powers of Appointment Act of 1951" (65 Stat. 91) permit the tax-free release only of

that decedent in 1943 was in good health and not particularly concerned with the prospect of death alter this result. The test is to be found in her motive, which must be of the sort that leads to testamentary disposition. *United States* v. *Wells*, 283 U. S. 102, 117 (1931).

A settlor's reservation of a power to change the ultimate beneficiaries of trust property is sufficient to cause the value of the property to be included in the settlor's estate upon death as a power to alter or amend the transfer in trust, under section 811 (d) (2). *Bank of New York & Trust Co., Administrator* (Estate of A. B. Hunt), 20 B. T. A. 677 (1930) ; *Laird* v. *Commissioner*, 29 B. T. A. 196 (1933), affirmed on other grounds (C. A. 3, 1935) 85 F. 2d 598, modified and remanded on other grounds on rehearing 85 F. 2d 600. Cf. *Porter* v. *Commissioner*, 288 U. S. 436 (1936). (The foregoing cases involve section 302 (d) of the Revenue Acts either of 1924 or 1926, whose wording, insofar as material here, is the same as section 811 (d) (2), I. R. C. 1939.) Where the settlor relinquishes this power in contemplation of death, section 811 (d) (2) specifically requires the inclusion of the value of the trust property in his estate.

Petitioners in attempting to fit their case into the Supreme Court's holding in *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630 (1946), contend that decedent's purpose in releasing her power of appointment in 1943 was to accomplish what she thought she had done in making a new will in 1941 (in which she specifially refrained from exercising her power of appointment), that is, to make certain that her son receive the trust assets free of tax. We think the analogy is misplaced. *Allen* v. *Trust Co. of Georgia, supra*, involved the creation of a trust by decedent in 1925 to provide for his children, both of whom were then in need of funds. His purpose in placing the money in trust was to protect his children against any misadventures that might result in the loss of the money, since prior gifts had been lost in unsuccessful business ventures. Decedent retained a power to amend the trust, which he released in 1937 upon being advised that his retention of the power of amendment would cause the value of the trust property to be included in his estate. The Court held that decedent's release in 1937 was not in contemplation of death because in making the release he was merely doing what he had intended to do in 1925, which was "to make complete and absolute gifts to his children, freed of all claims, including taxes." (p. 636.) The cases are analogous insofar as the decedent here was attempting to do in 1943 what she intended to do in 1941, but her intention in the latter year was simply to save

donated powers of appointment, not of reserved powers. See Conf. Rept. No. 2586, 77th Cong., 2d Sess., p. 71 (Amendment No. 418) ; H. Rept. No. 2333, 77th Cong., 2d Sess., p. 57 (defining a power of appointment) ; S. Rept. No. 382, 82d Cong., 1st Sess., p. 6 (specifically stating that the amendments made to section 811 (f) by the "Powers of Appointment Act of 1951" do not limit the scope of section 811 (a), (c), and (d)).

estate taxes. The record does not support a finding that decedent in 1941 intended to make a complete and absolute gift to her son.

The remaining question relates to the respondent's disallowance of part of the amount claimed for support of a dependent (decedent's husband) under section 812 (b) (5) of the Internal Revenue Code of 1939. On the estate tax return $15,000 was claimed by decedent's estate, and this amount was increased by amendment to the petition to $18,000. Respondent in his notice of deficiency allowed $12,000. Section 812 (b) (5)[3] provides that for purposes of the estate tax the value of the net estate shall be determined by deducting from the value of the gross estate amounts that are "reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the jurisdiction * * * under which the estate is being administered."

In our view petitioners have failed to show that under the circumstances here an amount in excess of $12,000 was reasonably necessary for the support of decedent's husband during the settlement of the estate. (Respondent does not question that decedent's husband was dependent on her for support, that the amount of $18,000 was actually expended, and that such payment was allowed under the laws of Connecticut.) As set forth in our Findings of Fact decedent's husband received pursuant to orders of a probate court of Connecticut payments of $1,000 a month as a support allowance for the period from the date of decedent's death, May 1949, until November 1950, a total of $18,000. In July 1949, 2 months after his wife's death, decedent's husband was paid a bequest of $10,000 as provided for in decedent's will. In addition, in November 1950 he received $4,000, representing payments of $1,000 a month from June through September 1950, under the residuary trust created by decedent's will. While it is apparent from the whole record here that decedent was well-to-do and that she and her husband enjoyed a high standard of living, petitioners have not demonstrated why, in light of the circumstances set out above, the additional $6,000 contended for was reasonably required for decedent's husband's support. Cf. *Mary M. Buck et al., Executors*, 25 B. T. A. 780 (1932), affirmed on this point sub nom. *Buck* v. *Helvering*, (C. A. 9, 1934) 73 F. 2d 760; *Estate of Charles C. Hanch*, 19 T. C. 65 (1952). The fact that the support payments amounting to $18,000 were authorized by the Connecticut Probate Court is not binding on us in our determination of whether such amounts were "reasonably required" within the meaning of a Federal taxing statute. *Buck* v. *Helvering, supra; Estate of Charles C. Hanch, supra.*

*Decisions will be entered under Rule 50.*

---

[3] Section 812 (b) (5) was repealed by section 502 (c) of the Revenue Act of 1950 (64 Stat. 962). The change was effective with respect to estates of decedents dying after September 23, 1950, the date of the enactment of the Revenue Act of 1950.